08 CV 00458

Bruce H. Simon (BS 2597)
Peter D. DeChiara (PD 0719)
Claire Tuck (CT 4379)
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, New York 10036-6976
Tel: (212) 563-4100
Fax: (212) 695-5436
pdechiara@cwsny.com

Darryl J. Anderson
Brenda C. Zwack
O'DONNELL, SCHWARTZ & ANDERSON, PC
1300 L Street N.W., Suite 1200
Washington, DC 20005
Tel: (202) 898-1707
Fax: (202) 682-9276
danderson@odsalaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

NATIONAL ASSOCIATION OF LETTER
CARRIERS, AFL-CIO and AMERICAN POSTAL
WORKERS UNION, AFL-CIO,

         *Plaintiffs*,

  - v. -

UNITED STATES POSTAL SERVICE and
UNITED STATES POSTAL SERVICE OFFICE
OF INSPECTOR GENERAL,

         *Defendants*.

-------------------------------------------------------------x

## COMPLAINT

Plaintiffs National Association of Letter Carriers, AFL-CIO ("NALC") and

American Postal Workers Union, AFL-CIO ("APWU"), for their complaint, allege as follows.

00114964.DOC.4

## INTRODUCTION

1. This is a case of unwarranted intrusion by government agencies into the privacy of their employees' medical information, an intrusion that exceeds the agencies' statutory authority and violates federal law, regulations and the United States Constitution.

2. Defendants United States Postal Service ("USPS") and USPS's Office of Inspector General ("USPS OIG") (together, "Defendants") have adopted a policy and practice of obtaining and disclosing employees' personal medical information, without the employees' knowledge or consent, when performing certain investigations related to possible disciplinary measures against the employees. In particular, Defendants have adopted a policy and practice of interviewing employees' personal physicians or other health care providers and reviewing their personal medical files, with no notice to the employee. Defendants tell the health care providers that they need not inform the employee of the disclosure of his or her protected health information.

3. Defendants' policy and practice causes the disclosure of highly sensitive health matters concerning employees, including information unrelated to the purpose of the investigations.

4. Upon information and belief, Defendants adopted the policy and practice in or about 2006. NALC, the union that represents city letter carriers employed by USPS, learned of it in September 2007. NALC submitted a written protest to the USPS Board of Governors demanding that Defendants cease and desist. By letter dated November 2, 2007, the Board of Governors refused to do so.

5. *Ex parte* contacts by Defendants' agents with employees' physicians and other medical providers have become a widespread national practice. Since the Board of Governors denied NALC's protest, plaintiffs have learned of numerous instances in which

Defendants' agents have obtained private health information about employees from their medical care providers without the employee's knowledge or consent.

6. NALC and APWU bring this action as representatives of their members, seeking a declaration that Defendants' policy and practice is unlawful and an injunction requiring them to cease and desist.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. §1331, as the action arises under the Constitution and the laws of the United States; under 28 U.S.C. §1339, as the action arises under acts of Congress relating to USPS; and under 39 U.S.C. §§401(1) and 409(a), as the action is against USPS.

8. Venue in this District is proper under 28 U.S.C. §1391(e)(3) and 39 U.S.C. §409(b), as NALC and APWU reside in this District.

## PARTIES

9. Defendant USPS is an independent establishment of the executive branch of the government of the United States, created and governed by the Postal Reorganization Act ("PRA"), 39 U.S.C. §§101-5605.

10. Defendant USPS OIG is an independent agency within, and is part of, USPS. It was created and is governed by the Inspector General Act, 5 U.S.C. App. 3, §8G(b).

11. Plaintiff NALC is a labor union and an association of active and retired employees of USPS. At all times relevant to this action, NALC has served as the exclusive collective bargaining representative under the PRA for the over 200,000 city letter carriers employed by USPS, over 92% of whom are members of NALC as a matter of voluntary choice.

At all relevant times, NALC and USPS have been party to a collective bargaining agreement that sets forth terms and conditions of the city letter carriers' employment.

12. Plaintiff APWU is a labor union and an association of postal workers, representing more than 260,000 USPS employees who work primarily in the Clerk, Maintenance and Motor Vehicle Services crafts. At all relevant times, APWU and USPS have been party to a collective bargaining agreement that sets forth terms and conditions for employees represented by APWU.

13. NALC and APWU represent and protect the interests of USPS employees in connection with their employment at USPS. This includes representing the interests of USPS employees during disciplinary proceedings and during investigations related to possible disciplinary proceedings. NALC and APWU also protect the privacy rights of USPS employees from infringement by USPS.

## FACTUAL ALLEGATIONS

14. For many years, USPS has routinely acquired information from its employees relating to their personal medical conditions. USPS obtained such information for a variety of reasons, including making decisions as to whether ill or injured employees are fit for duty; complying with its obligations, as an employer, under the Federal Employees' Compensation Act, 5 U.S.C. §8101 *et seq.*; determining employee eligibility for disability retirement; and implementing the Postal Service's sick leave regulations.

15. Prior to the events described in this complaint, USPS's general practice was to obtain needed medical information from its employees, as required by the federal Privacy Act. *See* 5 U.S.C. §552a(e)(2). USPS usually refrained from *ex parte* communications with employees' physicians and other medical care providers.

16. Upon information and belief, in or about 2006, the Defendants authorized USPS OIG agents to contact employees' physicians and medical care providers to obtain confidential medical information directly from them, without the knowledge or consent of the affected employees. Such contacts are sometimes related to investigations, on behalf of USPS, of potential criminal misconduct (such as workers' compensation fraud). However, the policy and practice of *ex parte* contacts are not limited to criminal investigations or investigations related to health benefits or workers' compensation. In some cases, Defendants' investigations relate solely to issues of job performance and the imposition of disciplinary action against Postal Service employees.

17. Defendants' policy and practice includes Defendants' agents interviewing employees' physicians or other health care providers and reviewing employees' medical records, all without the employees' knowledge or consent. This policy and practice further includes Defendants' agents telling the employee's health care provider that the provider need not inform the employee about the disclosure of his or her protected health information.

18. To obtain the protected health information, Defendants present the health care provider with a letter, prepared by Defendants, known as a "Health Care Provider" letter. An example of a "Health Care Provider" letter used by Defendants is attached hereto as Exhibit A.

19. The "Health Care Provider" letters differ somewhat from case to case, but are generally similar in form. They claim that Defendants have a right to review the protected health information of the employee. Typically, they set no limit on the scope of Defendants' claimed right to access the employee's private health information.

20. The "Health Care Provider" letters tell the employee's health care provider not only that he or she may lawfully disclose the employee's protected health information without the employee's consent, but also that the employee need not even be notified of the disclosure. In some instances, the letters ask the health care provider to refrain from notifying the employee of the disclosure for one year. *See* Exhibit A.

21. NALC first learned in September 2007 of Defendants' policy and practice of obtaining and disclosing employees' protected health information. On September 27, 2007, NALC's President, William H. Young, wrote to the Chairman of the USPS Board of Governors, demanding "that the Board of Governors direct the Office of the Inspector General to immediately cease use of [the Health Care Provider] letter and discontinue its current practice of extracting sensitive, protected health information from employee's health care providers without the employees' knowledge or authorization and without any legal authority to do so." This letter is attached hereto as Exhibit B.

22. By letter dated November 2, 2007, the USPS Board of Governors rendered a final decision denying NALC's protest and deeming lawful Defendants' policy and practice. "Therefore," the letter stated, "no further action will be taken" in connection with NALC's protest. This letter is attached hereto as Exhibit C.

23. An individual's medical information is strictly protected by privacy regulations adopted by the U.S. Department of Health and Human Services pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA Privacy Regulations"). *See* 45 CFR Parts 160 and 164. Even in the limited circumstances where HIPAA Privacy Regulations permit disclosure of protected health information, the disclosure must be limited to

the minimum necessary. *See* 45 C.F.R. §164.502(b)(1). Defendants' policy and practice results in violations of HIPAA and the HIPAA regulations.

24. Pursuant to the Privacy Act of 1974, the USPS must "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." 5 U.S.C. §552a(e)(2). Defendants' policy and practice violates the Privacy Act.

## COUNT I -- *ULTRA VIRES* CONDUCT

25. Plaintiffs restate and incorporate herein by reference the allegations of paragraphs 1 through 24.

26. Defendants' policy and practice constitutes agency action that is arbitrary, capricious, an abuse of discretion, and contrary to law. Defendants have exceeded their statutory authority by adopting a policy and practice of obtaining and disclosing employees' protected health information without their knowledge or consent, in violation of public policy as defined by the HIPAA Privacy Regulations and the Privacy Act of 1974.

## COUNT II -- CONSTITUTIONAL PRIVACY RIGHT VIOLATION

27. Plaintiffs restate and incorporate herein by reference the allegations of paragraphs 1 through 24.

28. Defendants have violated the right to privacy in the United States Constitution by adopting a policy and practice of obtaining and disclosing employees' protected health information without their knowledge or consent.

## COUNT III -- FOURTH AMENDMENT VIOLATION

29. Plaintiffs restate and incorporate herein by reference the allegations of paragraphs 1 through 24.

30. Defendants have violated the Fourth Amendment to the United States Constitution by adopting a policy and practice of obtaining and disclosing employees' protected health information without their knowledge or consent.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request a judgment:

(a) declaring unlawful and unconstitutional Defendants' policy and practice of obtaining and disclosing employees' protected health information without their knowledge or consent;

(b) enjoining Defendants, their agents, representatives and employees, from continuing such policy and practice; and

(c) granting such other relief as is just and proper.

Dated: January 17, 2008

Respectfully submitted,

*[signature: Bruce H. Simon]*

Bruce H. Simon (BS 2597)
Peter D. DeChiara (PD 0719)
Claire Tuck (CT 4379)
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, New York 10036-6976
Tel: (212) 563-4100
Fax: (212) 695-5436
pdechiara@cwsny.com

Darryl J. Anderson
Brenda C. Zwack
O'DONNELL, SCHWARTZ & ANDERSON, PC
1300 L Street N.W., Suite 1200
Washington, DC 20005
Tel: (202) 898-1707
Fax: (202) 682-9276
danderson@odsalaw.com

Attorneys for Plaintiffs

# EXHIBIT A



OFFICE OF INSPECTOR GENERAL

June 1, 2006

Dear Health Care Provider:

This letter provides you with the statutory and regulatory authority that allows you to release protected health information requested by the Office of Inspector General of the United States Postal Service when it is engaged in oversight activities involving the Office of Workers' Compensation Programs (OWCP).

Health care providers such as yourself are permitted to disclose protected health information to health oversight agencies without the written consent or authorization of the individual when these agencies are conducting oversight activities authorized by law. The review of protected health information is recognized as a necessary oversight activity because it is relevant in determining beneficiary eligibility. 45 C.F.R. § 164.512(d)(1)(iii).

The Office of Inspector General is a health oversight agency because it oversees through our investigations a government program in which health information is necessary to determine eligibility or compliance. 45 C.F.R. § 164.501.

Furthermore, when the Department of Health and Human Services (HHS) first proposed rules to implement the Health Insurance Portability and Accountability Act of 1996 (HIPAA), it included a list of agencies that could be health oversight agencies. HHS listed "Offices of Inspectors General of federal agencies" as health oversight agencies.

Finally, the Inspector General Act of 1978 authorizes the Office of Inspector General to investigate fraud, waste, and abuse in Postal Service programs and operations, one of which programs is the Postal Service's participation in OWCP. 5 U.S.C. App. 3 § 6(a)(4).

Normally, the individual would have a right to know that disclosure of the individual's protected health information had been made. However, because alerting the individual of this disclosure would likely jeopardize our oversight activities, we request at this time that you refrain from notifying the individual of your disclosure for one year from the date of this letter. Regulations authorize you to withhold notification under these circumstances. 45 C.F.R. § 164.528(a)(2)(i)(C).

The Office of Inspector General thanks you for enabling us to carry out its oversight responsibilities.

1735 N LYNN STREET
ARLINGTON VA 22209-2020
(703) 248-2100
FAX: (703) 248-2250

# EXHIBIT B



# National Association of Letter Carriers

**William H. Young**
President

100 Indiana Ave., NW
Washington, DC
20001-2144
202.393.4695
www.nalc.org

**Fredric V. Rolando**
Executive Vice President

**Gary H. Mullins**
Vice President

**Jane E. Broendel**
Secretary-Treasurer

**George C. Mignosi**
Asst. Secretary-Treasurer

**Dale P. Hart**
Director, City Delivery

**Brian E. Hellman**
Director, Safety & Health

**Myra Warren**
Director, Life Insurance

**Timothy C. O'Malley**
Director, Health Insurance

**Ernest S. Kirkland**
Director, Retired Members

**Board of Trustees:**
Lawrence D. Brown, Jr.
Chairman
Randall L. Keller
Michael J. Gill

Affiliated with the AFL-CIO &
Union Network International

September 27, 2007

James C. Miller III, Chairman
USPS Board of Governors
475 L' Enfant Plaza SW
Washington, DC  20260

Dear Chairman Miller:

On behalf of the National Association of Letter Carriers, AFL-CIO (NALC), I write to advise you of a misapplication of the HIPAA Privacy regulations by the United States Postal Service Office of the Inspector General and to demand immediate corrective action.

It recently came to my attention that the USPS OIG is contacting postal employees' health care providers -- without the authorization of or notice to the employee -- requesting that the health care providers disclose confidential protected health information about the employee to the USPS OIG. A copy of the letter that is being used, which is dated June 1, 2006, is enclosed. This letter, which is apparently used by USPS OIG agents investigating workers compensation fraud on behalf of the Postal Service, advises the health care provider that there is "statutory and regulatory authority" that allows the physician to disclose the employee's protected health information (as defined in the HIPAA privacy regulations) requested by the USPS OIG "when it is engaged in oversight activities involving the Office of Workers' Compensation Programs (OWCP)." The letter goes on to state that the providers may disclose this sensitive information without the written consent or authorization of the individual/patient because the USPS OIG claims it is a "health oversight agency" as defined by HIPAA. The letter ends by advising that although an individual is normally entitled to know when a disclosure of his protected health information has been made, the providers should withhold notification for one year "because alerting the individual of this disclosure would likely jeopardize our oversight activities."

We learned about this letter in connection with a recent removal arbitration for one of our members, in which a USPS OIG agent testified that this letter is used to obtain personal medical information from an employee's physician in connection with OIG's review of an OWCP case. I was shocked to learn that the OIG agents indicated that once they show the provider the letter, the provider discloses to them the employee's *entire* medical file, not simply her OWCP file and are led to believe that they can speak freely about the employee's medical history. This is all done without the knowledge or authorization of the employee/patient. In this particular case, after being approached by OIG agents, the

00112514.DOC.1

provider refused to speak to or treat the employee. The employee did not know what had led to the termination of her relationship with her medical provider until she heard the OIG agent's testimony at arbitration. In the meantime, the OIG obtained, under false pretenses, confidential information about the employee, including information that was in no way relevant to her OWCP case.

We demand that the Board of Governors direct the Office of the Inspector General to immediately cease use of the attached letter and discontinue its current practice of extracting sensitive, protected health information from employees' health care providers without the employees' knowledge or authorization and without any legal authority to do so. Through the letter, OIG is completely misrepresenting its status, claiming that it is a "health oversight agency" as defined by HIPAA and therefore entitled to obtain disclosures of protected health information under loosened standards. This is blatantly incorrect and an abuse of power. While under certain circumstances Offices of Inspectors General of federal agencies may qualify as health oversight agencies, the USPS OIG does not. It does not oversee a health care system or government benefit program. It investigates injury compensation fraud on behalf of the USPS for the benefit of the USPS. It is not authorized to conduct oversight activities of a government benefit program.

The HIPAA Privacy regulations have a specific standard for disclosures of protected health information in connection with workers compensation matters. *See* 45 C.F.R. 164.512(1) This standard permits disclosures as authorized by the Federal Employee Compensation Act (FECA). It does not permit the disclosure of information from a provider without an employee's release or without notification to the employee. Curiously, the USPS OIG does not rely upon, much less mention, this standard in its communication with providers. Instead, providers are led to believe that a broad and unauthorized disclosure of an employee's protected medical information to OIG is permitted by law. As a result, these providers may be violating HIPAA by disclosing this information, exposing themselves to both civil and criminal penalties.

On behalf of the members of the NALC, I demand that you direct the USPS OIG to immediately cease this practice and the use of the enclosed letter.

Sincerely,

*William H. Young*

William H. Young
President

# EXHIBIT C

BOARD OF GOVERNORS

**UNITED STATES POSTAL SERVICE**

RECEIVED
NOV 5 2007
OFFICE of the PRESIDENT
N.A.L.C. HDQRTRS, WASHINGTON, D.C.

November 2, 2007

Mr. William H. Young
President
National Association of Letter Carriers
100 Indiana Avenue, N.W.
Washington, DC 20001-2144

Dear Mr. Young:

This is in regard to your September 27, 2007 letter concerning the Office of Inspector General's authority to obtain health information under HIPAA's privacy regulations.

The Postal Service has reviewed the issues raised in your letter, and concluded that the Office of Inspector General is operating within the statutory authority of HIPAA, as well as its own statutory authority under the provisions of Title 39 and the Inspector General Act of 1978 in seeking these records. Therefore, no further action will be taken.

Sincerely,

*Wendy A. Hocking*

Wendy A. Hocking
Secretary of the
  Board of Governors

UNITED STATES POSTAL SERVICE
475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-1000
www.usps.com