UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                           :
NATIONAL ASSOCIATION OF LETTER                             :
CARRIERS, AFL-CIO and AMERICAN                             :
POSTAL WORKERS UNION, AFL-CIO,                             :
                                                           :          08 Civ. 00458 (DC)
            Plaintiffs,                                     :
                                                           :
                                                           :
      v.                                                    :
                                                           :
                                                           :
UNITED STATES POSTAL SERVICE and                           :
UNITED STATES POSTAL SERVICE OFFICE                        :
OF INSPECTOR GENERAL,                                      :
                                                           :
            Defendants.                                     :
------------------------------------------------------------ x


MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT


                          MICHAEL J. GARCIA
                          United States Attorney for the
                          Southern District of New York
                          Attorney for Defendants


LARA K. ESHKENAZI
Assistant United States Attorney
86 Chambers Street
New York, New York  10007
Telephone: 212.637.2758
Fax: 212.637.2702
E-mail: lara.eshkenazi@usdoj.gov

      – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ------------------------------------------------------------------- 1

BACKGROUND ------------------------------------------------------------------------------------ 2

ARGUMENT --------------------------------------------------------------------------------------- 3

POINT I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS
LACK STANDING ------------------------------------------------------------------- 3

A.    Applicable Legal Standards -------------------------------------------------------- 3

B.    Individualized Proof Is Required To Prove *Ultra Vires* Conduct ------------------- 5

C.    Individualized Proof Is Required To Prove a Violation of Plaintiffs'
Constitutional Privacy Rights ---------------------------------------------------- 11

D.    Plaintiffs Lack Standing To Pursue Their Fourth Amendment Claim ------------ 12

1.    Plaintiffs' Members Would Not Have Standing To Sue in Their Own
Right ---------------------------------------------------------------------- 12

2.    Individualized Proof Is Required To Prove a Violation of the Fourth
Amendment --------------------------------------------------------------- 13

POINT II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF ON THE
BASIS OF *ULTRA VIRES* CONDUCT ----------------------------------------------- 16

A.    Applicable Legal Standards ------------------------------------------------------ 16

B.    The Complaint Fails To State a Claim of *Ultra Vires* Conduct -------------------- 17

CONCLUSION ---------------------------------------------------------------------------------- 19

### PRELIMINARY STATEMENT

Defendants United States Postal Service (the "Postal Service") and United States Postal Service Office of Inspector General (the "OIG") (collectively, "the Government"), by their attorney Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs challenge the OIG's alleged practice of sending written requests for medical information and/or records to medical providers of Postal Service employees without the knowledge or consent of the affected employees.  Complaint ("Compl.")  ¶¶ 16-20.  According to plaintiffs, this alleged practice exceeds the OIG's statutory authority under the Health Insurance Portability and Accountability Act ("HIPAA") privacy regulations, 45 C.F.R. Parts 160 and 164, and the Privacy Act, 5 U.S.C. § 552a.  Compl. ¶¶ 25-30.

The Court should dismiss the complaint in its entirety because plaintiffs lack standing with respect to all of their claims.  As unions, plaintiffs carry the burden of establishing associational standing, which requires, *inter alia*, demonstrating that the claims asserted do not require individualized proof.  Plaintiffs will not be able to make this required showing because the analysis of whether the OIG's alleged practice constitutes *ultra vires* conduct in light of HIPAA and the Privacy Act, and whether it infringes on constitutional privacy rights of plaintiffs' members, requires individualized proof regarding the facts and circumstances surrounding each investigation in which the OIG requested health care information.  Further, with respect to plaintiffs' Fourth Amendment claim, plaintiffs will be unable to meet another requirement of associational standing – proving that each of plaintiffs' members affected by the OIG's alleged practice would be able to sue in his or her own right.  This is true because

plaintiffs' members lack a protected property interest in the health records at issue. Finally, the complaint fails to state a claim upon which relief may be granted because the OIG's alleged practice is within its authority under the Inspector General Act (the "IG Act"), 5 U.S.C. app. 3, and is consistent with both the HIPAA privacy regulations and the Privacy Act.

## BACKGROUND

Plaintiffs, the National Association of Letter Carriers, AFL-CIO ("NALC") and the American Postal Workers Union, AFL-CIO ("APWU"), are labor unions representing active employees of the Postal Service. Compl. ¶¶ 11-12. Specifically, NALC is the exclusive collective bargaining representative for the city letter carriers employed by the Postal Service. Id. ¶ 11. APWU represents Postal Service employees who work primarily in the clerk, maintenance and motor vehicle service crafts. Id. ¶ 12.

Plaintiffs filed this action on January 17, 2008, seeking declaratory and injunctive relief stemming from the alleged "unwarranted intrusion by government agencies into the privacy of their employees' medical information, an intrusion that exceeds the agencies' statutory authority and violates federal law, regulations and the United States Constitution." Compl. ¶ 1. According to the complaint, the OIG seeks to obtain employees' medical records in furtherance of investigations of potential criminal misconduct; the administration of health benefits, workers' compensation, and job performance evaluations; and the imposition of disciplinary action. Id. ¶ 16. Plaintiffs allege that the OIG agents interview employees' physicians or other health care providers without the knowledge or consent of the employees. Id. ¶ 17. Attached to the complaint is a sample "Health Care Provider" letter allegedly used by the OIG to seek "protected health information." Id. ¶¶ 18-20, Exh. A. The complaint acknowledges, however, that the

2

"letters differ somewhat from case to case."  Id. ¶ 19.

Plaintiffs claim the alleged practice of requesting medical information without the consent or knowledge of Postal Service employees constitutes *ultra vires* conduct because, according to plaintiffs, it exceeds the OIG's statutory authority under the HIPAA privacy regulations, 45 C.F.R. Parts 160 and 164, and the Privacy Act, 5 U.S.C. § 552a.  Compl. ¶¶ 25-26.  Plaintiffs further allege that the OIG's practice violates Postal Service employees' constitutional right to privacy as well as the Fourth Amendment of the United States Constitution.  Compl. ¶¶ 27-30.

## ARGUMENT

## I.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING

### A.    Applicable Legal Standards

The complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because plaintiffs lack standing.  Plaintiffs bear the burden of establishing standing and in the absence of standing, the Court lacks subject matter jurisdiction and the case must be dismissed.  See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89 (2d Cir. 2006) ("Although . . . standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1) . . . the proper procedural route is a motion under Rule 12(b)(1).") (citations omitted).

In resolving a Rule 12(b)(1) motion, the Court must accept all factual allegations in the complaint as true, but should not draw inferences favorable to the party asserting jurisdiction,

3

and may consider materials beyond the pleadings to resolve the issue of jurisdiction.  See

Maloney v. Cuomo, 470 F. Supp. 2d 205, 210 (E.D.N.Y. 2007).

Plaintiffs are labor unions representing active employees of the Postal Service.  Compl.

¶¶ 11-12.  A union attempting to bring suit on behalf of its members must prove that it has

associational standing by establishing that:

> (a) its members would otherwise have standing to sue in their own right; (b) the
> interests it seeks to protect are germane to the organization's purpose; and (c)
> neither the claim asserted nor the relief requested requires the participation of
> individual members in the lawsuit.

Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977); accord Harris

v. McRae, 448 U.S. 297, 321 (1980); Bano v. Union Carbide Corp., 361 F.3d 696, 713 (2d Cir.

2004).

To satisfy the third prong of the Hunt test, plaintiffs must show that "neither the claim

asserted nor the relief requested requires the participation of individual members in the

lawsuit[,]"  Hunt, 432 U.S. at 343, or "individualized proof."  Bano, 361 F.3d at 714.

> [A]n association [does not] automatically satisf[y] the third prong of the Hunt test
> simply by requesting equitable relief rather than damages.  The organization lacks
> standing to assert claims of injunctive relief on behalf of its members where "the
> fact and extent" of the injury that gives rise to the claims for injunctive relief
> "would require individualized proof," or where "the relief requested [would]
> require[ ] the participation of individual members in the lawsuit."

Bano, 361 F.3d at 714 (quoting Warth v. Seldin, 422 U.S. 490, 515–16 (1975), and Hunt, 432

U.S. at 343); accord Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 596 (2d Cir. 1993).

"[S]hould the facts and the extent of the injury asserted require consideration of the unique and

peculiar circumstance of individual members and the court has to engage in ad hoc inquiries

therein, then the association would not be permitted standing to solely bring [the] action."

4

Sherwin-Williams Co. v. Spitzer, No. 04 Civ. 185 (DNH) (RFT), 2005 WL 2128938, at *8 (N.D.N.Y. Aug. 24, 2005) (citations and internal quotation marks omitted).

For the reasons that follow, plaintiffs lack standing because litigation of their claims requires individualized proof.  Further, with respect to plaintiffs' Fourth Amendment claim, plaintiffs lack standing because their individual members do not have "standing to sue in their own right."

**B.    Individualized Proof Is Required To Prove *Ultra Vires* Conduct**

Count I of the complaint alleges that the OIG's practice of requesting medical information or records constitutes *ultra vires* conduct as it exceeds the OIG's statutory authority and is "in violation of public policy as defined by the HIPAA Privacy Regulations and the Privacy Act of 1974."  Compl. ¶ 26.  The Inspector General Act (the "IG Act"), 5 U.S.C. app. 3, authorizes the OIG to investigate fraud, waste, and abuse in Postal Service programs and operations, which includes the administration of the Postal Service's sick leave and Family and Medical Leave Act programs, as well as the Postal Service's participation in the workers' compensation program.  See 5 U.S.C. app. 3, § 8G(f)(3)(B)(i); 39 C.F.R. 230.1(d).  The IG Act gives the OIG broad authority to access information and documentation in furtherance of its purpose.  See 5 U.S.C. app. 3 §§ 6(a), 8G(g)(1);  See also Winters Ranch P'ship v. Viadaro, 123 F.3d 327, 334 (5th Cir. 1997) (The IG Act "does not withdraw any legitimate investigatory technique from the IG's repertoire, and it does not dictate any particular manner in which the IG must deploy or orchestrate the available devices of inquiry.").  Moreover, with regard to HIPAA, Congress has explicitly stated that "[n]othing in [HIPAA] shall be construed to diminish the authority of any Inspector General, including such authority as provided in the [IG Act]."  42

U.S.C. § 1320a-7c(a)(5).   Indeed, the HIPAA privacy regulations specifically authorize the disclosure of medical information for a "law enforcement purpose," or to those responsible for the oversight of a health care program.

Regarding the law enforcement exception, HIPAA regulations permit health care providers to disclose medical information without patient consent to law enforcement officials[1], if the following three conditions are satisfied: (1) the request is relevant and material to a legitimate law enforcement inquiry; (2) the request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and (3) the request is such that de-identified records could not reasonably be used.  45 C.F.R. §§ 164.501 & 164.512(f)(1)(ii)(C).  The form of such a request can be either by administrative subpoena or "by a separate written statement that, on its face, demonstrates that the applicable requirements have been met."  45 C.F.R. § 164.514(h)(2)(i)(A).

The complaint concedes that the OIG sought some of the information and/or records at issue to further criminal investigations and investigations regarding potential abuse of health benefits or workers' compensation programs.  Compl. ¶ 16.  As such, on its face, the complaint appears to challenge the legitimacy of requests that at least arguably would fall under the purview of HIPAA's law enforcement exception.

Thus, in the absence of an analysis of each specific request, the Court will be unable to determine whether the OIG's practice constitutes *ultra vires* conduct because whether the OIG has met its burden of satisfying the three-pronged law enforcement exception test described in the HIPAA privacy regulations turns of the circumstances of each individual investigation.  In

---

[1]  OIG agents are federal law enforcement officers under 18 U.S.C. § 3061.

other words, any determination regarding whether the OIG's conduct is *ultra vires* requires "individualized proof," see Bano, 361 F.3d at 714, concerning the facts and circumstances surrounding each request for information.  This is true because without knowing the specifics of the types of inquiries for which the OIG sought medical information, there is no way for the Court to decide whether the requests were legitimate and sufficiently tailored to the particular investigations as required by the HIPAA privacy regulations.  See 45 C.F.R. § 164.512(f)(1)(ii)(C).  Indeed, as plaintiffs concede, each request for information differed "somewhat from case to case," see Compl. ¶ 19, and in the absence of individualized proof, the Court will not be able to analyze the unique facts of each case as required by the HIPAA privacy regulations.

More specifically, the *ad hoc* analysis in which the Court would need to engage in order to determine the validity of plaintiffs' *ultra vires* claims would include an examination of each investigation in which the OIG requested health information and, at a minimum, the following factors: (1) the purpose of the investigation; (2) the specific request for information from the health care provider; and (3) the relevance of the requested information to the specific investigation.  The Court would also be unable to discern the identity of the union members whose rights were allegedly violated "without delving into individual circumstances" as all union members are not aggrieved.  See Rent Stabilization Ass'n, 5 F.3d at 597 (finding no associational standing when, *inter alia*, "it is impossible to discern the identity of the aggrieved parties without delving into individual circumstances").  This is precisely the type of "*ad hoc* factual inquiry" referenced by the Second Circuit in Bano that deprives plaintiffs of standing.  Bano, 361 F.3d 714-16; see also Rent Stabilization Ass'n, 5 F.3d at 596 (affirming dismissals of claims for

injunctive and declaratory relief based on lack of associational standing).

The HIPAA regulations also permit the disclosure of health information, without patient consent, to those responsible for the oversight of a health care program. 45 C.F.R. §§ 164.512(d)(1) & 164.528(a)(2)(i). The OIG is a health oversight agency for purposes of HIPAA because the IG Act requires the OIG to prevent and detect fraud and abuse in Postal Service programs such as workers' compensation or leave administration, in which health information is necessary to determine eligibility and compliance. See 5 U.S.C. app. 3 § 8G(f)(2); 39 C.F.R. § 230.1(d); 45 C.F.R. § 164.501. Thus, to the extent the complaint alleges that the OIG sought access to health information for purposes other than law enforcement – i.e., OIG requests for information "are not limited to criminal investigations" but also include "investigations relat[ed] solely to issues of job performance and the imposition of disciplinary action" (presumably related to leave issues), see Compl. ¶ 16 – such requests would fall under the health oversight exception. Again, to determine whether each request was specifically related to the OIG's health benefits oversight function, the Court would need to examine the particular facts and circumstances of each investigation.

Accordingly, because the determination of whether the OIG's method of requesting health care information and records falls within the parameters of either the law enforcement exception or the health oversight exception encompassed in the HIPAA privacy regulations would require the evaluation of individualized proof relating to each specific request, plaintiffs will not be able to prove that the OIG engaged in *ultra vires* conduct in the absence of the participation of its members whose medical information and/or records were obtained by the OIG. As such, plaintiffs lack standing to pursue these claims. See Hunt, 432 U.S. at 343; Bano,

8

361 F.3d at 714-16.

With respect to the Privacy Act, plaintiffs allege that OIG's practice constitutes *ultra vires* conduct because the Privacy Act requires agencies to "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." Compl. ¶¶ 24-26 (quoting 5 U.S.C. § 552a(e)(2)). As an initial matter, whether 5 U.S.C. § 552a(e)(2) applies to situations in which federal employers investigate their own employees is an "open question" in the Second Circuit. See Carton v. Reno, 310 F. 3d 108, 111 (2d Cir. 2002) (declining to reach the issue but noting that the Second Circuit had yet to specifically determine whether "Federal programs" encompassed government employers or was limited to federal benefit programs) .

In any event, once again, the determination of whether the OIG's practice runs afoul of the Privacy Act would require individualized proof. As the Second Circuit has acknowledged the "'specific nature of each case shapes the practical considerations at stake that determine whether an agency has fulfilled its obligation . . . to elicit information directly from the subject of the investigation to the greatest extent practicable.'" Carton, 310 F.3d at 111-12 (quoting Cardamone v. Cohen, 241 F.3d 520, 528 (6th Cir. 2001)). In Carton, the court engaged in a fact-specific inquiry to determine whether the Immigration and Naturalization Service ("INS") violated the Privacy Act when, in the course of investigating complaints of the use of abusive tactics of an investigator, an INS agent interviewed third-party complainants without first interviewing the investigator. 310 F.3d at 112-13. In reaching its conclusion that the INS had not violated the Privacy Act, the court considered the type of investigation conducted and the impracticality of

9

interviewing the target prior to contacting third-party witnesses.  See id.  The court noted that the "relevant inquiry under [5 U.S.C. § 552a(e)(2)] concerns . . . the reasonableness of the investigator's decision to contact a third party viewed at the time it was made."  Id. at 113 (citations, emphasis and internal quotations omitted).  See also Mumme v. U.S. Dep't of Labor, 150 F. Supp. 2d 162, 173 (D. Me. 2001) (finding no violation of the Privacy Act when agency conducting fraud investigation contacted third-parties rather than plaintiff).

Thus, in order to determine whether the OIG's practice of contacting health care providers constitutes *ultra vires* conduct with respect to the Privacy Act, the Court would need to know the individual circumstances surrounding each investigation.  Some of the factors the Court would have to consider are (1) the type of investigation; (2) whether the employee was interviewed prior to the request for medical information or records; (3) the practicality of contacting the employee first; and (4) the OIG's reasons for proceeding in a particular manner.  See Carton, 310 F.3d at 112-13.  As discussed above, the Second Circuit has expressly held that associations cannot carry their burden of establishing standing in lawsuits requiring this type of case-by-case inquiry.  See Bano, 361 F.3d at 714-15.

In sum, because individualized proof would be necessary in order for the Court to consider whether the OIG exceeded its statutory authority under the IG Act by engaging in conduct in violation of HIPAA and the Privacy Act, the Court must dismiss Count I of the complaint for lack of standing.[2]

---

[2] Count I of the complaint appears to allege *ultra vires* conduct rather than stating direct causes of action under HIPAA and the Privacy Act.  To the extent the Court may construe the complaint as asserting claims under HIPAA and the Privacy Act, plaintiffs lack standing under either statute.  With respect to HIPAA, as an initial matter, while HIPAA generally provides for the confidentiality of medical records, see 42 U.S.C. § 1320d-1 to d-7, "[f]ederal courts have

(continued...)

**C.    Individualized Proof Is Required To Prove a Violation of Plaintiffs' Constitutional Privacy Rights**

Plaintiffs similarly lack standing with respect to their constitutional claims.  While the Second Circuit has recognized the existence of a constitutional privacy right with respect to the disclosure of medical records, "it is also well-established that the right to privacy is a conditional right that can be overcome if the government can demonstrate a substantial interest that outweighs the [patients'] right to privacy."  Grosso v. Town of Clarkstown, No. 94 Civ. 7722(JGK), 1998 WL 566814, *6 (S.D.N.Y. Sept. 3, 1998) (citing Whalen v. Roe, 429 U.S. 589, 602 (1977)).  See also Schachter v. Whalen, 581 F.2d 35, 37 (2d Cir. 1978) (finding that substantial state interest in the investigation of licensed physicians outweighed patients' interests in confidentiality).

In balancing the right to privacy against the Government's interest, the Court must consider a number of factors including the type of record requested, the potential for harm, the

---

²(...continued)
found that Congress did not intend for HIPAA to create a private cause of action for individuals." Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349, 373 (S.D.N.Y. 2006) (citing Runkle v. Gonzales, 391 F. Supp. 2d 210, 237 (D.D.C. 2005)).  Thus, because the plaintiffs' individual members would not be able to sue under HIPAA in their own right, plaintiffs would not be able to meet their burden of demonstrating associational standing with respect to any HIPAA claims. See Hunt, 432 U.S. at 343.

In order to pursue a claim under the Privacy Act, plaintiffs would be required to make a showing of an "adverse effect" caused by the alleged failure to comply with the Privacy Act.  See Quinn v. Stone, 978 F.2d 126, 135 (3d Cir. 1992) (noting that the adverse effect requirement of (g)(1)(D) is, in effect, a standing requirement); Crichton v. Cmty. Servs. Admin., 567 F. Supp. 322, 324 (S.D.N.Y. 1983) (holding that mere maintenance of allegedly "secret file" was insufficient to warrant damages where there was no showing of an adverse effect).   Plaintiffs have not properly alleged a claim under the Privacy Act because they have not alleged any adverse effect of the alleged violation of 5 U.S.C. § 552a(e)(2).  See Mumme, 150 F. Supp. 2d at 174 (noting that allegation that agency conducting fraud investigation collected information from third parties rather than plaintiff was insufficient to demonstrate an adverse effect).

adequacy of safeguards to prevent unauthorized disclosure, the need for access to the records, and whether there is an express statutory mandate or articulated public policy regarding the disclosure of the records.  Grosso, 1998 WL 566814, at *6 (citing cases).  The Second Circuit has also explicitly recognized that "the interest in the privacy of medical information will vary with the condition."  Powell v. Schriver, 175 F.3d 107, 111 (2d Cir. 1999) (finding that "[l]ike HIV status . . . transsexualism is the unusual condition that is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others).

Therefore, in order to determine whether the OIG violated any Postal Service employee's right to privacy, the Court must engage in an individualized analysis considering all of the factors described above including the specific medical condition at issue and the OIG's need and purpose for gathering the information.  Such an analysis would obviously necessitate the presentation of "individualized proof."  Accordingly, the Court must dismiss Count II of the complaint for lack of standing.  See Bano, 361 F.3d at 714-15.

**D.    Plaintiffs Lack Standing To Pursue Their Fourth Amendment Claim**

### 1.    Plaintiffs' Members Would Not Have Standing To Sue in Their Own Right

To establish standing to challenge a search under the Fourth Amendment a plaintiff must have had a subjective "expectation of privacy" in the area searched, and that subjective expectation must be reasonable.  Rakas v. Illinois, 439 U.S. 128, 143 (1978); Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).  "A defendant lacks 'standing' in the Fourth Amendment context when his contacts with the searched premises are so attenuated that no expectation of privacy he has in those premises could ever be considered reasonable."  United States v. Fields, 113 F.3d 313, 320 (2d Cir. 1997).  One important factor in determining the

12

reasonableness of a plaintiff's expectation of privacy is the extent of the plaintiff's property or possessory interest in the place searched.  See United States v. Osorio, 949 F.2d 38, 40 (2d Cir.1991).

Under Second Circuit law, a patient does not have a constitutionally protected property interest in medical records maintained by health care providers.  See Gotkin v. Miller, 514 F.2d 125, 129 (2d Cir. 1975) (rejecting federal due process claim that New York law gives state residents a constitutionally protected property interest in medical records maintained by health care providers); Webb v. Goldstein, 117 F. Supp. 2d 289, 295 (E.D.N.Y. 2000) (finding that parolee does not have Fourth Amendment possessory interest in prison medical records because they belong to the state).  See also Young v. Murphy, 90 F. 3d 1225, 1236 (7th Cir. 1996) (holding that patient has no standing to raise Fourth Amendment challenge to investigators' examination of patient's nursing home records).  Here, plaintiffs lack standing to pursue their Fourth Amendment claim because the members of their respective unions do not have Fourth Amendment possessory interests in the records sought by the OIG from health care providers. See Gotkin, 514 F.2d at 129.  Accordingly, plaintiffs cannot meet their burden of establishing the first prong of the Hunt test for associational standing – demonstrating that their members would otherwise have standing to sue in their own right.

### 2.    Individualized Proof Is Required To Prove a Violation of the Fourth Amendment

Moreover, to the extent plaintiffs may argue that even though their members lack a property interest in the medical records, they had a reasonable expectation of privacy in the medical records maintained by the health care providers, individualized proof would again be

13

required.  An individual's "privacy right in his [or her] medical records is neither fundamental

nor absolute."  Crawford v. Manion, No. 96 Civ. 1236 (MBM), 1997 WL 148066, at *1

(S.D.N.Y. Mar. 31, 1997) (holding prisoner waived privacy rights in medical records by filing

suit against the state in which his health and medical records were at issue).  "Whether a public

employee has a reasonable expectation of privacy is dependent on the context."  Lukas v.

TriBorough Bridge and Tunnel Authority, No. CV-92-3680 (CPS), 1993 WL 597132, at *6

(E.D.N.Y. Aug. 18, 1993) (citing O'Connor v. Ortega, 480 U.S. 709, 717-18 (1987)).  "Thus,

although the applicable standard [for determining whether an employee has a reasonable

expectation of privacy] is objective, it can be properly applied only when the relevant factual

circumstances are clear and well-developed."  Lukas, 1993 WL 597132, at *6 (citing cases).

        The type of investigation conducted by the OIG is also relevant to the determination of

whether an employee's Fourth Amendment rights are violated.  In Lukas, the court noted the

distinction between investigatory searches conducted by employers to recover property belonging

to the employer, in which the Government may justify its search through a showing of

reasonableness, and criminal investigations which would require a showing of probable cause.

Lukas, 1993 WL 597132, at *7.  As the court noted, "the question of whether or not a search by a

government employer is reasonable depends in large measure on what the search is meant to

discover."  Id.  The court further acknowledged that where the search is "an investigatory search

to recover property belonging to the employer, the probable cause and warrant requirements are

inapposite and the search is constitutionally permissible as long as it meets the standard of

reasonableness at its inception and in its scope."  Id.  See also O'Connor, 480 U.S. at 732 (Scalia,

J. concurring) ("[G]overnment searches to retrieve work-related materials or to investigate

14

violations of workplace rules – searches of the sort that are regarded as reasonable and normal in the private-employer context – do not violate the Fourth Amendment." ).

Plaintiffs will be unable to prove that their members had reasonable expectations of privacy in the absence of individualized proof regarding the circumstances of each particular request for medical information or records by the OIG.  For example, if some of the requests for medical records at issue were related to extended sick leave taken by employees, or claims for workers' compensation, the Court could conclude that the Postal Service employees waived their right to privacy regarding those records.  See Crawford, 1997 WL 148066, at *2; Strong v. Uniondale Union Free School Dist., 902 F.2d 208 (2d Cir. 1990) (finding school board's request for medical records of teacher on extended sick leave was reasonable because of strong interest in protecting children).  In addition, if the OIG requested records pursuant to an investigation of fraudulent workers' compensation claims, the Court could find that the Government had a significantly strong interest to outweigh any privacy interest of the employee.  See In re Search Warrant (Sealed), 810 F.2d 67, 73 (3rd Cir. 1987) (stating that use of medical records of patients of doctor accused of insurance fraud is allowed because of "significant government interests in investigation").  In any event, plaintiffs acknowledge the fact that the circumstances surrounding each investigation in this case are unique.  See Compl. ¶ 16 (alleging that the contacts with health care providers "are sometimes related to investigations . . . of potential criminal misconduct[,]" and "[i]n some cases, [the] investigations relate solely to issues of job performance and the imposition of disciplinary action").  Accordingly, because the Court may only determine the reasonableness of the Government's intrusion on a case-by-case basis, plaintiffs lack standing with respect to their Fourth Amendment claims and the Court must dismiss Count III of the

15

complaint.[3]

## II.  THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF ON THE BASIS OF *ULTRA VIRES* CONDUCT

### A.    Applicable Legal Standards

A motion to dismiss under Rule 12(b)(6) should be granted if the complaint fails "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  While a complaint need not contain "detailed factual allegations," the factual allegations asserted "must be enough to raise a right to relief above the speculative level." Id. at 1964-65.  In Twombly, the Supreme Court expressly repudiated the "no set of facts" standard that originated in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and that courts have long applied as the standard of pleading required to survive a motion to dismiss.[4]  See Twombly, 127 S. Ct. at 1969 ("Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . [A]fter puzzling the profession for 50 years, this famous observation has earned

---

[3]  While plaintiff may argue that the third prong of the Hunt test is a prudential, rather than constitutional, requirement for standing, see United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555 (1996), "if the involvement of individual members of an association is necessary" – as it is here – "either because the substantive nature of the claim or the form of the relief sought requires their participation, [there is] no sound reason to allow the organization standing to press their claims . . . ." Bano, 361 F.3d at 715. Here, the affected union members would be required to participate in depositions in order to explain the circumstances surrounding each investigation.  For example, in those circumstances in which the OIG investigated an allegation of workers' compensation fraud by a particular union member, the member's testimony would be necessary to determine what information, if any, the member had provided to the Postal Service regarding his or her injury and whether the OIG needed additional health care information for purposes of its investigation.  There is "no reason to relax [prudential standing requirements] where, in order for the organizations to succeed in the lawsuit, there must be participation by the members themselves."  Id.

[4]  Conley stated that it was an "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  355 U.S. at 45-46.

its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted

pleading standard: once a claim has been stated adequately, it may be supported by showing any

set of facts consistent with the allegations in the complaint.").

The Second Circuit has interpreted <u>Twombly</u> to require a "flexible 'plausibility standard,'

which obliges a pleader to amplify a claim with some factual allegations in those contexts where

such amplification is needed to render the claim <u>plausible</u>."  <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58

(2d Cir. 2007) (emphasis in original); <u>see also</u> <u>Gamble v. City of New York</u>, No. 06 Civ. 4849

(JSR), 2007 WL 2847221, at *3 (S.D.N.Y. Sept. 28, 2007) (same).  Thus, "a complaint must

allege facts that are not merely consistent with the conclusion that the defendant violated the law,

but which actively and plausibly suggest that conclusion."  <u>Port Dock & Stone Corp. v. Oldcastle</u>

<u>Northeast, Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007).  When deciding a motion to dismiss under

Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all

reasonable inferences in the plaintiff's favor.  <u>See</u> <u>De Jesus v. Sears, Roebuck & Co.</u>, 87 F.3d 65,

70 (2d Cir. 1996).

**B.    The Complaint Fails To State a Claim of *Ultra Vires* Conduct**

In the event the Court does not dismiss Count I of the complaint for lack of standing, the

Court should dismiss Count I for failure to state a claim.  Plaintiffs cite only two statutes in

support of their *ultra vires* claim – HIPAA (and more specifically, its privacy regulations) and

the Privacy Act.  Plaintiffs fail to allege, however, a plausible theory of how the OIG's alleged

practice, used as an investigatory tool pursuant to its broad authority under the IG Act, violates

the HIPAA privacy regulations and the Privacy Act.

To the extent plaintiffs allege that the OIG's practice of requesting health care

information somehow exceeds their authority under the IG Act to conduct investigations due to the HIPAA privacy regulations, plaintiffs fail to take into account the law enforcement and health oversight exceptions described above.  See supra at 6-8.  The complaint specifically alleges that the OIG obtained some of the information and/or records at issue to further criminal investigations, including investigations regarding potential abuse of health benefits or workers' compensation.  Compl. ¶ 16.  The complaint thus challenges the legitimacy of requests that would fall under the purview of both the law enforcement and health oversight exceptions specifically carved out of the HIPAA privacy regulations.  See supra at 6-8.

Plaintiffs also fail to allege any *ultra vires* conduct on the part of the OIG in violation of the Privacy Act.  The Privacy Act permits an individual to sue a federal agency if the agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual . . . ."  5 U.S.C. § 552a(g)(1)(D).  As noted above, supra at 10, n.2, a claim pursuant to section 552a(g)(1)(D) requires a showing of an "adverse effect" caused by a failure to comply with the Privacy Act.  See Quinn, 978 F.2d at 135; Crichton, 567 F. Supp. at 324 (holding that mere maintenance of allegedly "secret file" was insufficient to warrant damages where there was no showing of an adverse effect).  Plaintiffs have not claimed that the alleged violation of 5 U.S.C. § 552a(e)(2) had any adverse effect on any of plaintiffs' individual members.  The mere fact that the OIG may have collected information from third parties without contacting plaintiffs is not enough to demonstrate an adverse effect.  See Mumme, 150 F. Supp. 2d at 174.

Moreover, in the absence of the participation of plaintiffs' members, plaintiffs cannot allege any adverse effect because of the unique nature of each investigation.  For example, it is

18

possible that as a result of obtaining health records during the course of a particular investigation, the OIG concluded that the subject employee had committed no wrongdoing. In such a case, there would be no adverse effect as a result of the OIG's decision to seek the relevant medical information without immediately notifying the employee of its request. Moreover, even in cases where the OIG found wrongdoing, plaintiffs would need to demonstrate that in any particular case, the request for medical records had a separate adverse effect on the employee. See Mumme, 150 F. Supp. 2d at 174. In the absence of allegations of an adverse effect, plaintiffs cannot prove that the OIG's practice is inconsistent with the provisions of the Privacy Act.

Accordingly, even were the Court to find that plaintiffs had standing to sue, it should dismiss Count I of the complaint pursuant to Rule 12(b)(6) for failure to state a claim.

## CONCLUSION

For the reasons stated herein, the Court should grant defendants' motion for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and dismiss the complaint in its entirety.

Dated:  New York, New York
        June 6, 2008

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendants

By:    /s/ Lara K. Eshkenazi
       LARA K. ESHKENAZI
       Assistant United States Attorney
       Telephone: (212) 637-2758
       Fax: (212) 637-2702
       E-mail: lara.eshkenazi@usdoj.gov