Bruce H. Simon (BS 2597)
Peter D. DeChiara (PD 0719)
Claire Tuck (CT 4379)
COHEN, WEISS and SIMON LLP
330 West 42nd Street
New York, New York 10036-6976
Tel:  (212) 563-4100
Fax:  (212) 695-5436
pdechiara@cwsny.com

Attorneys for Plaintiff National Association of Letter Carriers, AFL-CIO

Darryl J. Anderson                              Adrienne L. Saldaña (AS 8327)
O'DONNELL, SCHWARTZ & ANDERSON, PC              SPIVAK LIPTON LLP
1300 L Street N.W., Suite 1200                  1700 Broadway, Suite 2100
Washington, DC 20005                            New York, NY  10019
Tel:  (202) 898-1707                            Tel:  (212) 765-2100
Fax:  (202) 682- 9276                           Fax:  (212) 765-8954
danderson@odsalaw.com                           asaldana@ spivaklipton.com

Attorneys for Plaintiff American Postal Workers Union, AFL-CIO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                    :
NATIONAL ASSOCIATION OF LETTER                      :
CARRIERS, AFL-CIO and AMERICAN POSTAL               :
WORKERS UNION, AFL-CIO,                              :
                                                    :        Case No. 08-CV-00458 (DC)
                                  *Plaintiffs*,     :
                                                    :
              - v. -                                :
                                                    :
UNITED STATES POSTAL SERVICE and                    :
UNITED STATES POSTAL SERVICE OFFICE                 :
OF INSPECTOR GENERAL,                               :
                                                    :
                                  *Defendants*.     :
                                                    :
-----------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM  IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

## Table Of Contents

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL ALLEGATIONS ................................................................................................ 3

ARGUMENT ........................................................................................................................ 4

I.    PLAINTIFFS HAVE STANDING ............................................................................ 4

      A.    Individualized Proof Is Not Necessary For Plaintiffs' Fourth Amendment Claim ................................................................................................. 7

      B.    Plaintiffs' Members Would Have Standing Under The Fourth Amendment To Challenge The Search Of Their Medical Records ........................................... 15

      C.    Individualized Proof Is Not Necessary For Plaintiffs' Constitutional Right To Privacy Claim ................................................................. 17

      D.    Individualized Proof Is Not Necessary For Plaintiffs' *Ultra Vires* Claim ........... 20

II.   PLAINTIFFS' *ULTRA VIRES* COUNT STATES A CLAIM FOR RELIEF................... 25

CONCLUSION ................................................................................................................... 25

## Table of Authorities

**Page**

*Am. Booksellers Ass'n, Inc. v. Random House, Inc.*,
    1996 WL 499520 (S.D.N.Y. 1996)..................................................................5

*Bano v. Union Carbide Corp.*,
    361 F.3d 696 (2d Cir. 2004)......................................................................5

*Burlington N. R. Co. v. OIG, R.R. Ret. Bd.*,
    983 F.2d 631 (5th Cir. 1993) ..............................................................20, 21

*Carton v. Reno*,
    310 F.3d 108 (2d Cir. 2002)......................................................................24

*U.S. v. Calandra*,
    414 U.S. 338 (1974)..........................................................................20, 21

*Crawford v. Manion*,
    1997 WL 148066 (S.D.N.Y. 1997)..............................................................11

*DeMassa v. Nunez*,
    770 F.2d 1505 (9th Cir. 1985) ..................................................................16

*Doe v. New York*,
    15 F.3d 264 (2d Cir. 1994)....................................................................9, 17

*Employees Committed For Justice v. Eastman Kodak Co.*,
    407 F. Supp. 2d 423 (W.D.N.Y. 2005) ...................................................5, 6, 7

*Ferguson v. Charleston*,
    532 U.S. 67 (2001)............................................................................9, 13

*Gaston v. MSPB*,
    2006 WL 3779754 (Fed. Cir. 2006)..............................................................11

*Gotkin v. Miller*,
    514 F.2d 125 (2d Cir. 1975)......................................................................16

*Grosso v. Clarkstown*,
    1998 WL 566814 (S.D.N.Y. 1998)..............................................................19

*Gruenke v. Seip*,
    225 F.3d 290 (3d Cir. 2000)......................................................................13

*Harlan v. Lewis*,
    141 F.R.D. 107 (E.D. Ark. 1992)...........................................................................8, 10

*Hunt v. Apple Adv. Comm'n*,
    432 U.S. 333 (1977)...............................................................................................4, 5

*Idaho Aids Found., Inc. v. Idaho Housing & Fin. Ass'n*,
    422 F. Supp. 2d 1193 (D. Idaho 2006) ................................................................6, 9

*Lankford v. Hobart*,
    27 F.3d 477 (10th Cir. 1994) ...................................................................................9

*Leventhal v. Knapek*,
    266 F.3d 64 (2d Cir. 2001).................................................................................15, 16

*Lukas v. TriBorough Bridge & Tunnel Auth.*,
    1993 WL 597132 (E.D.N.Y. 1993)...........................................7, 9, 12, 13, 15

*MacArthur v. San Juan*,
    416 F. Supp. 2d 1098 (D. Utah 2005)......................................................................9

*MacWade v. Kelly*,
    460 F.3d 260 (2d Cir. 2006)...................................................................................12

*Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    2005 WL 1500893 (S.D.N.Y. 2005) ........................................................................6

*In re NYSE Specialists Secs. Litig.*,
    503 F.3d 89 (2d Cir. 2007).....................................................................................25

*Nat'l Ass'n of College Bookstores, Inc. v. Cambridge Univ.  Press*,
    990 F. Supp. 245 (S.D.N.Y. 1997).................................................................5, 6, 7

*Nat'l Treas. Employees Union v. Von Raab*,
    489 U.S. 656 (1989)................................................................................9, 12, 13, 14

*New York Nat'l Org. For Women v. Terry*,
    886 F.2d 1339 (2d Cir. 1989)...................................................................................7

*O'Connor v. Ortega*,
    480 U.S. 709 (1987)...........................................................................................13, 15

*Pa. Psychiatric Soc'y v. Green Spring Health Servs. Inc.*,
    280 F.3d 278 (3d Cir. 2002).....................................................................................5

*Powell v. Schriver*,
    175 F.3d 107 (2d Cir. 1999)................................................................17

*Rent Stabilization Ass'n v. Dinkins*,
    5 F.3d 591 (2d Cir. 1993) ..................................................................5

*Risica v. Dumas*,
    466 F. Supp. 2d 434 (D. Conn. 2006).......................................17, 18

*See v. Seattle*,
    387 U.S. 541 (1967)..........................................................................21

*Sherwin-Williams Co. v. Spitzer*,
    2005 WL 2128938 (N.D.N.Y. 2005) .............................................5, 24

*Statharos v. Taxi & Limousine Comm'n*,
    198 F.3d 317 (2d Cir. 1999)........................................................17, 18

*Strong v. Bd. of Educ.*,
    902 F.2d 208 (2d Cir. 1990).............................................................12

*Truckers United For Safety v. Mead*,
    251 F.3d 183 (D.C. Cir. 2001) .........................................................20

*UAW v. Brock*,
    477 U.S. 274 (1986)......................................................................4, 20

*U.S. v. Fields*,
    113 F.3d 313 (2d Cir. 1997)........................................................15, 16

*U.S. v. First Nat'l Bank*,
    866 F. Supp. 884 (D. Md. 1994) ...............................................20, 21

*U.S. v. Jacobsen*,
    466 U.S. 109 (1984)......................................................................9, 12

*U.S. v. Knoll*,
    16 F.3d 1313 (2d Cir. 1994).............................................................16

*U.S. v. Metro. Ambulance & First-Aid Corp.*,
    395 F. Supp. 2d 1 (E.D.N.Y. 2005) ................................................23

*U.S. v. Montgomery County Crisis Ctr.*,
    676 F. Supp. 98 (D. Md. 1987) ..................................................20, 21

*U.S. v. Osorio*,
  949 F.2d 38 (2d Cir. 1991)........................................................................9, 15, 16

*U.S. v. Univ. Hosp. Inc.*,
  2006 WL 2612631 (S.D. Ohio 2006)......................................................................23

*U.S. v. Westinghouse Elec. Corp.*,
  638 F.2d 570 (3d Cir. 1980).......................................................................................9

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
  517 U.S. 544 (1996)...................................................................................................5

*Warth v. Seldin*,
  422 U.S. 490 (1975)...................................................................................................5

*Webb v. Goldstein*,
  117 F. Supp. 2d 289 (E.D.N.Y. 2000) ....................................................................16

*Young v. Murphy*,
  90 F.3d 1225 (7th Cir. 1996) ..................................................................................16

## U.S. CONSTITUTION, FEDERAL STATUTES AND FEDERAL REGULATIONS

U.S. Const. amend. IV ...............................................................................................12

5 U.S.C. §552a(e)(2).............................................................................................24, 25

5 U.S.C. §§8101-8152 ...............................................................................................11

5 U.S.C. App. 3 §2(1)................................................................................................20

5 U.S.C. App. 3 §6(a)(4)............................................................................................21

5 U.S.C. App. 3 §8G(b) ..............................................................................................3

20 C.F.R. §10.506 ......................................................................................................11

29 C.F.R. §825.307(a)................................................................................................11

45 C.F.R. §160.103 ....................................................................................................10

45 C.F.R. §164.502 ..............................................................................................10, 23

45 C.F.R. §164.512(f)(1)(ii)(C)(2) ...........................................................................23

45 C.F.R. §164.514(h)(2)(i)(A) .................................................................................22

v

65 Fed. Reg. 81,321 (2000) ........................................................................................8

65 Fed. Reg. 82,462 (2000) ............................................................. passim

## STATE STATUTES

N.Y. C.P.L.R. §4504...................................................................................10

Cal. Civ. Code §56.10..................................................................................10

Plaintiffs National Association of Letter Carriers, AFL-CIO ("NALC") and American

Postal Workers Union, AFL-CIO ("APWU") submit this memorandum in opposition to the

motion to dismiss of Defendants United States Postal Service ("USPS") and USPS Office of

Inspector General ("USPS OIG").

## PRELIMINARY STATEMENT

Defendants have recently adopted the practice of interviewing postal employees' personal

physicians or other medical providers and reviewing their medical records -- without the

employees' knowledge or consent -- when performing certain investigations related to possible

employee discipline.  In this action, two postal employee unions seek to enjoin the practice,

which violates the employees' constitutional rights and exceeds USPS OIG's statutory authority.

Defendants move to dismiss on the ground that Plaintiffs lack standing, arguing that their

claims would require an individualized inquiry into the circumstances of each search of an

employee's medical records.  In effect, Defendants seek to have their practice escape judicial

review, since individual employees, who receive no notice that their health information has been

searched, have no practical means to sue to stop it.

Defendants' standing argument fails because the searches differ only in their details, not

in any way material to Plaintiffs' claims.  In all cases, the Fourth Amendment and the

constitutional right to privacy protect the health information of employees, since all employees

have a reasonable expectation of privacy in such information.  Since USPS OIG agents search

employee medical records without a warrant, all of the searches violate the Fourth Amendment.

But even if there were no warrant requirement, Plaintiffs' constitutional claims would still not

turn on an individualized inquiry of the details of each search; they would turn on whether

Defendants can show a compelling institutional need for its practice of invading employees'

privacy.  When NALC originally protested Defendants' practice, USPS responded simply that

the searches were lawful; it has never taken the position that their legality depends on the context of each search.  No basis exists, particularly at this early pre-discovery stage of the litigation, to conclude that such an individualized inquiry would be required.

Defendants also challenge Plaintiffs' standing to assert their Fourth Amendment claim on the ground that the medical information searched is not in the employees' possession and thus, they claim, the employees themselves would lack standing to raise a Fourth Amendment challenge.  Second Circuit law, however, makes clear that possession of the item searched is not necessary to a finding of a reasonable expectation of privacy.

Nor is an individualized inquiry necessary for resolution of Plaintiffs' *ultra vires* claim, which raises the broad legal question of whether Defendants' practice is authorized by the Inspector General Act ("IGA"), 5 U.S.C. App. 3, a statute which says nothing about the right to invade employees' medical privacy.  The exceptions to the Health Insurance Portability and Accountability Act ("HIPAA") that Defendants cite cannot provide authorization under the IGA.  HIPAA's "law enforcement" exception only applies to investigations of potential unlawful conduct, not other types of employee misconduct.  And, in no case does it permit use of the letters that USPS OIG agents present to medical providers to gain access to employees' medical information.  HIPAA's "health oversight" exception only applies in situations in which an individual is suspected of fraud to obtain health benefits.  But in such cases of alleged workers' compensation fraud, federal regulations applicable to USPS specifically prohibit *ex parte* communication between employer and physician.  For these reasons, Defendants also fail to show that Plaintiffs' *ultra vires* claim should be dismissed for failure to state a claim.

Defendants' motion should be denied.

## FACTUAL ALLEGATIONS

The Parties.  USPS is an independent establishment of the executive branch of the federal government.  Complaint ("Compl.") ¶9.  USPS OIG, an agency that is part of USPS, *id*. ¶10, was created and is governed by the IGA, 5 U.S.C. App. 3 §8G(b).  *Id*. ¶10.  Plaintiffs NALC and APWU are labor unions that represent postal employees.  *Id*. ¶¶11-12.

Defendants' Practice.  In or about 2006, Defendants began their practice of having USPS OIG agents contact the personal physicians or other medical providers of postal employees (including Plaintiffs' members) -- without the employees' knowledge or consent -- when performing certain investigations related to possible discipline against the employees.  *Id*. ¶ 16. In many cases but not all, the investigations relate to potential criminal misconduct, like workers' compensation fraud.  *Id*. ¶16.  In some cases, the investigations relate solely to job performance. *Id*.

Defendants' practice includes USPS OIG agents interviewing the employee's medical provider and reviewing the employee's medical records.  *Id*. ¶17.  The practice also includes the USPS OIG agents telling the medical providers that they need not inform the employee about the disclosure of the employee's private health information.  *See id*. ¶¶17, 20.

To obtain access to the employee's medical information, USPS OIG agents present the employee's medical provider with a form letter, referred to here as a "Health Care Provider" ("HCP") letter.  *Id*. ¶18.  The HCP letters, which are generally similar in form, claim that the USPS OIG agents have authority under the IGA and under HIPAA's "health oversight" exception to access employees' medical information.  *Id*. ¶¶18, 19 & Ex. A.  The letters set no limit on the scope of USPS OIG's purported right to access the employee's medical information. *Id*. ¶19 & Ex. A.

3

NALC's Demand That Defendants Cease.  On September 27, 2007, NALC's President wrote to USPS's Board of Governors demanding that Defendants cease their practice of accessing employee's health information without the employee's knowledge or consent.  *Id.* ¶21 & Ex. B.  The Board of Governors flatly denied NALC's request, asserting that USPS OIG was acting lawfully "in seeking these [medical] records."  *Id.* ¶22 & Ex. C.  It did not assert that determining the legality of Defendants' practice would require a case-by-case inquiry into the facts of each search.

The Instant Lawsuit.  In their *ultra vires* claim in Count I, Plaintiffs assert that Defendants' practice exceeds USPS OIG's authority under the IGA.  *Id.* ¶26.  Count II asserts that the practice violates employees' right to privacy under the United States Constitution.  *Id.* ¶28.  Count III claims that the practice violates the Fourth Amendment.  *Id.* ¶30.  The suit seeks no damages, only a judgment declaring Defendants' practice unlawful and unconstitutional and enjoining it.  *Id.* p.8.

Defendants now move to dismiss, arguing that the Plaintiffs lack standing and also that their *ultra vires* count fails to state a claim for relief.  As we explain below, these arguments fail.

## ARGUMENT

## I.    PLAINTIFFS HAVE STANDING

Associations, including unions, have standing to sue based on injury to their members. *UAW v. Brock*, 477 U.S. 274, 281 (1986).  An association has such standing when (1) its members would otherwise have standing to sue in their own right; (2) the interests that the association seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the association's members in the lawsuit.  *Hunt v. Apple Adv. Comm'n*, 432 U.S. 333, 343 (1977).  This third prong does not preclude *some* individual participation.  *Employees Committed For Justice v. Eastman Kodak Co.*, 407

F.Supp.2d 423, 434 (W.D.N.Y. 2005); *Am. Booksellers Ass'n, Inc. v. Random House, Inc.*, 1996 WL 499520, at *5 (S.D.N.Y. 1996). Associational standing only fails when "the individual participation of *each* injured party" is "indispensable to proper resolution of the case." *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (emphasis added); *accord Hunt*, 432 U.S. at 342-43; *see, e.g., Bano v. Union Carbide Corp.*, 361 F.3d 696, 714-15 (2d Cir. 2004) (standing denied when "each" of the individuals "would have to be involved in the proof of his or her claims"); *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) (standing denied when court would have "to engage in an *ad hoc* factual inquiry for *each* landlord") (emphasis in original).

Courts are typically reluctant to dismiss a complaint at the outset of the litigation for failure to satisfy the third prong of the associational standing test. *Employees Committed For Justice*, 407 F.Supp.2d at 435 (denying motion to dismiss because court "not convinced" "[a]t this early point in the litigation" that individual participation would be required); *see also Pa. Psychiatric Soc'y v. Green Spring Health Servs. Inc.*, 280 F.3d 278, 286 (3d Cir. 2002) (association's complaint "should not be dismissed before it is given the opportunity to establish" that individual participation would not be required).

Moreover, unlike the first two prongs of the associational standing test, the third prong is not a constitutional requirement, only a prudential consideration self-imposed by the courts. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 556-58 (1996); *Sherwin-Williams Co. v. Spitzer*, 2005 WL 2128938, at *7 (N.D.N.Y. 2005). Accordingly, courts have "inherent discretion" in applying it. *Id*. at *8. In doing so, courts should ask whether permitting associational standing would facilitate the fair and efficient adjudication of the members' rights. *Nat'l Ass'n of College Bookstores, Inc. v. Cambridge Univ.*

*Press*, 990 F. Supp. 245, 248, 250 (S.D.N.Y. 1997); *see also Employees Committed For Justice*, 407 F.Supp.2d at 434-35.

This Court has recognized that the third prong may be relaxed when practical obstacles would prevent individual members from suing on their own behalf. *Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2005 WL 1500893, at *4 & n.41 (S.D.N.Y. 2005); *see also Idaho Aids Found., Inc. v. Idaho Housing & Fin. Ass'n*, 422 F.Supp.2d. 1193, 1198 (D. Idaho 2006) (organization may assert constitutional privacy claims on behalf of individuals who, as a practical matter, may be unable to assert their own rights). Here, were the Court to hold that Plaintiffs failed to meet the third prong of the associational standing test, that holding would not only preclude the fair and efficient adjudication of employees' privacy rights, but would almost certainly preclude *any* adjudication of those rights. Individual employees have no practical means to sue to enjoin Defendants' practice of prying into their medical records. USPS OIG provides them no notice when it searches their medical records, and even tells their medical providers that they need not inform the employee of the disclosure. Compl. ¶17. Typically, the employees whose privacy has been violated only learn of the disclosure, if at all, long after the fact, making injunctive relief impossible. An individual could conceivably sue for damages, but a damages remedy would be both inadequate and nearly impossible to quantify.

In determining whether the third prong is satisfied, a court must look at the "claim asserted" and the "relief requested." *College Bookstores*, 990 F. Supp. at 248. As to the claims asserted by Plaintiffs, there is no need for individual participation. To prove Defendants' practice, Plaintiffs will not need any testimony or other evidence from their members. Indeed, because employees receive no notice of the disclosure of their medical information, they typically have no information about Defendants' conduct. The relevant information about the

conduct of the USPS OIG agents rests with the Defendants, information which Plaintiffs plan to obtain through discovery.[1]

As to the relief requested, where, as here, an association seeks only injunctive or other prospective relief, not damages, individual participation is almost never needed.  *Employees Committed For Justice*, 407 F.Supp.2d at 433 ("almost a bright-line rule" that requests for equitable relief do not require individual participation) (citation omitted); *see also College Bookstores*, 990 F. Supp. at 248; *see, e.g., New York Nat'l Org. For Women v. Terry*, 886 F.2d 1339, 1348-49 (2d Cir. 1989); *Lukas v. TriBorough Bridge & Tunnel Auth.*, 1993 WL 597132, at *4 (E.D.N.Y. 1993).  Plaintiffs do not seek relief tailored to any individual.  They seek a flat ban on Defendants' practice of accessing *any* employee's medical records without notice to, and consent by, the employee.  Such relief will inure to the benefit of all of Plaintiffs' members, by making the privacy of their medical information more secure.  *See Terry*, 886 F.2d at 1348 (granting association standing when relief sought would "inure to the benefit of all members").

### A.    Individualized Proof Is Not Necessary For Plaintiffs' Fourth Amendment Claim

Defendants argue that Plaintiffs lack standing to assert their Fourth Amendment claim because, they contend, the claim would require proof of the circumstances of each individual search by USPS OIG agents.  Def. Mem. 13-15.

---

[1] Defendants argue that testimony from individual employees may be needed, for example, "to determine what information, if any, the member had provided to the Postal Service regarding his or her injury and whether the OIG needed additional health care information for purposes of its investigation."  Def. Mem. 16 n.3.  But USPS would *know* what information the employee had provided to it and USPS OIG would *know* what additional information it believed it needed for its investigation; there would be no need to obtain such information from the employee.  But, as noted *supra* pp. 4-5, even if some individual participation were required for Plaintiffs to prove their case, that would not defeat associational standing.

Defendants' view that the Court need analyze the details of each search misconstrues the nature of Plaintiffs' claims. Plaintiffs are not suing over a discrete series of past incidents. We are suing because Defendants have engaged in, and continue to engage in, a systematic *policy and practice* of searching employees' health information when conducting certain types of discipline-related investigations. Compl. ¶2. This practice harms not only those employees whose medical records have been searched but also those whose records may be searched in the future -- searches whose details cannot now be known. Indeed, Defendants' practice harms *all* postal employees by making the privacy of their relationships with their medical providers less secure, potentially discouraging them as patients from sharing information with their providers or even going to see their providers -- to the detriment of their health care. As the U.S. Department of Health and Human Services ("HHS") has explained:

> . . . the entire health care system is built upon the willingness of individuals to share the most intimate details of their lives with their health care providers. The need for privacy of health information, in particular, has long been recognized as critical to the delivery of needed medical care. More than anything else, the relationship between a patient and a clinician is based on trust. The clinician must trust the patients to give full and truthful information about their health, symptoms, and medical history. The patient must trust the clinician to use that information to improve his or her health and to respect *the need to keep such information private.*

65 Fed. Reg. 82,462, 82,467 (2000) (emphasis added); *see also* Exec. Order No. 13, 181, 65 Fed. Reg. 81321 (2000) (protecting privacy of health information "improves the quality of health care by fostering an environment in which patients can feel more comfortable in providing health care professionals with accurate and detailed information about their personal health"); *Harlan v. Lewis*, 141 F.R.D. 107, 109 (E.D. Ark. 1992) (noting "crucial importance of confidentiality in the physician-patient relationship"). Defendants' practice not only discourages postal employees from sharing information with their providers but also discourages providers from treating postal

employees, since by doing so, they risk drawing the attention of federal agents. *See, e.g.,* Compl., Ex. B, at 1-2 (citing instance where "after being approached by OIG agents, the provider refused to speak to or treat the employee").

Individualized proof is not required for Plaintiffs' Fourth Amendment claim because Fourth Amendment protection applies to *every* instance in which USPS OIG agents search employees' medical records. Fourth Amendment protection applies to the search of items in which the individual has a reasonable expectation of privacy, *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984); *Nat'l Treas. Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989); *U.S. v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991); *Lukas*, 1993 WL 597132, at *5, and all employees have a reasonable expectation of privacy in their health information. *U.S. v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("There can be no question that an employee's medical records ... are well within the ambit of materials entitled to privacy protection") (cited with approval in *Doe v. New York*, 15 F.3d 264, 267 (2d Cir. 1994)); *accord Lankford v. Hobart*, 27 F.3d 477, 479 (10th Cir. 1994); *Idaho Aids Found.*, 422 F.Supp.2d at 1194. For example, the Supreme Court explained in *Ferguson v. Charleston*, 532 U.S. 67, 78 (2001), that a hospital patient undergoing tests has a "reasonable expectation of privacy" that the test results "will not be shared with nonmedical personnel without her consent."

This expectation regarding the privacy of medical records stems in part from the ethical codes of health care professions, which generally prohibit the disclosure of patient information. *See MacArthur v. San Juan*, 416 F.Supp.2d 1098, 1191 (D. Utah 2005) (confidentiality "'a fundamental ethical tenet of medicine'") (citing Am. Med. Ass'n report); *see*, *e.g.*, AMA, "Patient Confidentiality," <www.ama-assn.org/ama/pub/category/4610.html> ("physician may not disclose any medical information revealed by a patient or discovered by a physician in

connection with the treatment of a patient").  State laws too create an expectation of privacy in medical records.  *See*, *e.g.*, N.Y. C.P.L.R. §4504 (broadly prohibiting disclosure by health care providers of confidential patient information); Cal. Civ. Code §56.10 (same).  As a result of these ethical codes and laws, "there is a general public understanding that physicians will not disclose patient information" unless compelled to do so.  *Harlan*, 141 F.R.D. at 110.

HIPAA's Privacy Rule, 45 C.F.R. §164.502, which recognizes that "privacy is a fundamental right," 65 Fed. Reg. 82,462, 82,464, and a "necessary foundation for delivery of high quality health care," *id*. at 82,467, only heightens the expectation that medical records will be kept private.  The HIPAA Privacy Rule applies to "any" information created or received by a health care provider about a person's physical or mental condition.  45 C.F.R. §160.103 (setting forth  broad definition of "health information" and thus of "protected health information").

Finally, federal employment regulations reinforce the expectation that employees' medical information will not be disclosed without their knowledge or consent.  The EEOC, for example, has indicated that an employer seeking to contact an employee's doctor "must obtain a release from the employee" since "a doctor cannot disclose information about a patient without his/her permission."  EEOC, *Enforcement Guidance:  Disability-Related Inquiries And Medical Examinations Of Employees Under The Americans With Disabilities Act* (2000), at 24 n.57 <www.eeoc.gov/policy/docs/guidance-inquiries.html>.

Defendants point out, Def. Mem. 15, that every search is necessarily unique:  the employee involved is different, the health care provider is different, and the medical records searched are different.  But for purposes of constitutional analysis, these differences are immaterial.  In each case, USPS OIG is conducting a search of medical records over which the employee has a reasonable expectation of privacy.

Defendants argue that an individualized inquiry would be needed to determine whether the employee waived his right to privacy.  Def. Mem. 14-15.  But Plaintiffs only challenge Defendants' practice of searching medical information *without* the employee's consent.  *See* Compl. ¶2.  If the employee actually consented to the search, by executing a written waiver, that particular search would not be part of the practice that Plaintiffs challenge.  The same would be true if an employee effectively waived his privacy, such as by bringing a suit that put his medical condition at issue.  *See, e.g., Crawford v. Manion*, 1997 WL 148066, at *2 (S.D.N.Y. 1997) (cited at Def. Mem. 14).

However, contrary to Defendants' assertion, Def. Mem. 15, employees do not waive their medical privacy rights simply by taking sick leave or claiming workers' compensation.  In fact, a Department of Labor ("DOL") regulation under the Family and Medical Leave Act ("FMLA"), §2611-54, which authorizes sick leave, specifically prohibits an employer from obtaining information directly from an employee's health care provider; only the employer's health care provider may contact the employees' health care provider and *only with the employee's permission*.  *See* 29 C.F.R. §825.307(a).  A DOL regulation under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§8101-8152, which governs workers' compensation for postal employees, makes clear that contacting the employee's physician without notice is prohibited:  the employer may not visit or telephone the employee's physician and may only write if the employee is copied.  20 C.F.R. §10.506.[2]  These regulations confirm that an

---

[2] Since USPS OIG is part of USPS, Compl. ¶10; *Gaston v. MSPB*, 2006 WL 3779754, at *1 (Fed. Cir. 2006), USPS OIG should not be allowed to end run these regulations.

employee retains his or her privacy rights even when taking sick leave or claiming workers' compensation.[3]

Because all employees have a reasonable expectation of privacy in their medical information, resolution of Plaintiffs' Fourth Amendment claim would turn not on a case-by-case inquiry, but on a broad legal question:  whether it is reasonable for the Defendants to search employees' medical records without their knowledge or consent when investigating possible discipline against the employee.  *See* U.S. Const. amend. IV (prohibiting "unreasonable searches").  In general, searches are only reasonable under the Fourth Amendment when the government has obtained a search warrant.  *Nat'l Treas. Employees Union*, 489 U.S. at 665 ("a search must be supported, as a general matter, by a warrant issued upon probable cause"); *accord MacWade v. Kelly*, 460 F.3d 260, 268 (2d Cir. 2006); *see also Jacobsen*, 466 U.S. at 114 (warrantless searches "presumptively unreasonable"); *Lukas*, 1993 WL 597132, at *7.  Because it is not Defendants' practice to obtain a search warrant, Compl. ¶18 (Defendants use HCP letters), the Court can find Defendants' practice to violate the Fourth Amendment without any individualized inquiry.

An exception to the warrant requirement may exist when the supervisory staff of a public employer engages in a "noninvestigatory" search of the workplace, including to recover employer property.  *Lukas*, 1993 WL 597132, at *7 (cited at Def. Mem. 14).  In such cases,

---

[3] The cases Defendants cite are inapt.  *Crawford*, cited at Def. Mem. 15, did not concern sick leave or workers' compensation or a search of an employees' medical records; it involved a prison releasing a prisoner's medical records to the attorney general's office to allow that office to defend against a lawsuit that the prisoner had brought, in which he put his health records at issue.  1997 WL 148066, at *1.  Nor did *Strong v. Bd. of Educ.*, 902 F.2d 208 (2d Cir. 1990), concern the search of an employee's medical records.  It simply held that a school district could reasonably request that a teacher returning from sick leave disclose her medical records, since the school district "has a strong interest in protecting the children under its care."  *Id.* at 212. The case has no relevance to postal employees.

requiring a warrant could place an undue burden on the efficient operation of the workplace, including because supervisors are generally not trained in the procedures for obtaining a warrant. *O'Connor v. Ortega*, 480 U.S. 709, 721-23 (1987).  Here, by contrast, all the searches that Plaintiffs challenge are investigatory; they are performed as part of "investigations related to possible disciplinary measures against the employees."  Compl. ¶2.  And they are not searches of the workplace or for employer property; they seek employee's health information in the possession of employees' personal medical providers.  *Id*. ¶17.  Nor are the USPS OIG agents supervisors unschooled in warrant procedures; they are law-enforcement officers.  Def. Mem. 6 n.1.  Accordingly, the warrant requirement applies across the board, with no individualized analysis required.[4]

But no individualized inquiry would be necessary even if the warrant requirement did not apply.  If no warrant requirement applied, Defendants would still have the burden of demonstrating a compelling justification for their practice of searching employees' medical records without their knowledge or consent.  *Nat'l Treas. Employees Union*, 489 U.S. at 668 (government needs "sufficiently compelling" reasons to conduct warrantless searches); *Gruenke v. Seip*, 225 F.3d 290, 301 (3d Cir. 2000) (government's interest in search "must be compelling").  In particular, the focus would be on whether the government has a "special need" to conduct the warrantless searches.  *See Ferguson*, 532 U.S. at 79-82.  The inquiry would thus

---

[4] In those cases concerning potential criminal misconduct, such as workers' compensation fraud, Compl. ¶16, the warrant requirement undoubtedly applies.  *See Lukas*, 1993 WL 597132, at *7 (E.D.N.Y. 1993) (warrant required when search conducted "to further a criminal investigation"); *see also Ferguson*, 532 U.S. at 81 (court only tolerates warrantless searches where "no law enforcement purposes behind the searches"); *Nat'l Treas. Employees Union*, 489 U.S. at 667 (1989) (probable cause standard "peculiarly related to criminal investigations") (citation omitted).

not be on the details of each search, but on whether Defendants have a compelling institutional need to engage in their practice of infringing employees' medical privacy.

In *Nat'l Treas. Employees Union*, for example, the Court, in determining whether the custom service's employee drug tests violated the Fourth Amendment, did not consider the circumstances under which any particular employee was tested, or what the testing of such employee may have revealed, but focused only on whether the government had a "compelling interest" in performing the tests. *See* 489 U.S. at 671 (finding that custom service had compelling interest in ensuring that front-line interdiction personnel are physically fit and have unimpeachable integrity). In *Lukas*, 1993 WL 597132, a union of transit authority employees asserted that management violated the Fourth Amendment rights of toll booth operators by listening in on their workplace conversations. The court granted the union associational standing to assert the Fourth Amendment claim, *see id.* at *4, nowhere even suggesting that resolution of the claim would require an analysis of the circumstances of each conversation.

There would similarly be no need for an individualized inquiry here. Indeed, in denying NALC's demand that Defendants cease their practice, the USPS Board of Governors asserted the legality of the searches, without any individualized analysis. Compl., Ex. C. No individualized analysis, therefore, would be required by the Court to evaluate Defendants' defense.

But even if the Court, in resolving Plaintiffs' claims, had to consider separately certain broad categories of searches -- such as those that involve potential criminal conduct by the employee versus those that do not, or those that involve suspected workers' compensation fraud versus those that do not -- this would still be a far cry from requiring individualized proof of *each* search. As noted *supra* pp. 4-5, an organization satisfies the third prong of the associational standing test so long as proof is not needed from *each* member. Dividing the searches into broad

14

groupings, if necessary, would not unduly burden the adjudication of the case, since the Court

could analyze representative searches for each category.  It would certainly not be grounds for

the Court to exercise its prudential discretion to deny Plaintiffs standing, especially since

denying Plaintiffs standing would, as a practical matter, deprive the employees of any practical

means of obtaining judicial review of Defendants' practice.

**B.**    **Plaintiffs' Members Would Have Standing Under The Fourth Amendment To Challenge The Search Of Their Medical Records**

Defendants also claim that Plaintiffs lack standing to assert their Fourth Amendment

claim under the first prong of the associational standing test.  Def. Mem. 12-13.  They argue that

because the health information searched is in the possession of the employees' medical

providers, not in the employees' own possession, the employees themselves would lack standing

to sue.  *Id.*

This argument fails because Fourth Amendment protection attaches to items in which the

individual has a reasonable expectation of privacy, *see supra* p.9, even if the item is not owned

or possessed by the individual.  *See, e.g., Osorio*, 949 F.2d 38 (finding breach of Fourth

Amendment even though individual "had no property or possessory interest" in the items); *U.S.*

*v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (lack of possessory interest does not rule out

reasonable expectation of privacy).  For example, the Second Circuit has held that a government

employee has standing to bring a Fourth Amendment challenge to a search by his employer, even

if he does not own or possess the item searched.  *See, e.g., Leventhal v. Knapek*, 266 F.3d 64, 73-

74 (2d Cir. 2001) (search of computer belonging to employer); *see also O'Connor*, 480 U.S. at

719 (desk and file cabinets); *see also Lukas*, 1993 WL 597132, at *4 (toll booth employees have

standing to challenge employer's listening to conversations held in employer's toll booths).  In

addition, the Second Circuit has held that the Fourth Amendment extends to papers a person

leaves with his or her lawyer, *U.S. v. Knoll*, 16 F.3d 1313, 1321 (2d Cir. 1994), not because the client owns the papers, but "because the client has a subjective expectation that such papers will be kept private and such expectation is one society recognizes as reasonable." *Id*.; *see also DeMassa v. Nunez*, 770 F.2d 1505, 1506 (9th Cir. 1985).

Ownership or possession may be relevant to determining whether a reasonable expectation of privacy exists in other contexts. *See, e.g., Osorio*, 949 F.2d 38 (search of apartment in which criminal defendant was a guest). But these factors are irrelevant here, since there is no question that employees have a reasonable expectation of privacy in their medical records.[5]

---

[5] The cases Defendants cite do not support their position:

In *Gotkin v. Miller*, 514 F.2d 125 (2d Cir. 1975), plaintiff claimed that by refusing to turn over her medical records, certain hospitals deprived her of her property without due process. The Second Circuit denied the claim because New York law gave her no property interest in the records. *Id*. at 128-29. The case did not concern a government search of the plaintiff's medical records and, indeed, the court specifically held that the Fourth Amendment had no relevance to the case. *Id*. at 130.

In *Webb v. Goldstein*, 117 F.Supp.2d 289 (E.D.N.Y. 2000), parole officers gave copies of the plaintiff's prison medical records to state authorities. In denying plaintiff's Fourth Amendment claim, the court noted that the prison medical records belonged not to plaintiff but to New York State. In other words, in *Webb*, New York state officers gave records that already belonged to New York to New York state authorities. Here, by contrast, Defendants are not searching their own employee medical files. They are searching the medical records of employee's personal medical providers.

Finally, in *Young v. Murphy*, 90 F.3d 1225 (7th Cir. 1996), the Seventh Circuit held that a nursing home did not violate the Fourth Amendment by disclosing the records of a former patient to state investigators, because, the court reasoned, the patient had no "property interest" in the records. *Young* is contrary to the law of this Circuit to the extent it stands for the proposition that a person needs a property or possessory interest in the item searched to have standing to bring a Fourth Amendment challenge. *Fields*, 113 F.3d at 320; *Osorio*, 949 F.2d at 38; *see, e.g., Leventhal*, 266 F.3d at 73-74; *Knoll*, 16 F.3d at 1321.

### C.   Individualized Proof Is Not Necessary For Plaintiffs'
###       Constitutional Right To Privacy Claim

Separate and apart from their Fourth Amendment claim, Plaintiffs assert in Count II that Defendants' practice violates employees' constitutional right to privacy, a right which this Circuit recognizes as protecting the confidentiality of personal information. *See Statharos v. Taxi & Limousine Comm'n*, 198 F.3d 317, 322-23 (2d Cir. 1999); *Doe*, 15 F.3d at 267; *Risica v. Dumas*, 466 F.Supp.2d 434, 440-41 (D. Conn. 2006).

Defendants argue that resolution of Plaintiffs' privacy claim will require an individualized inquiry into the health condition of each employee whose records are searched. Def. Mem. 12 (citing *Powell v. Schriver*, 175 F.3d 107 (2d Cir. 1999)). This argument fails. Constitutional privacy protection attaches whenever the plaintiff has a reasonable expectation of privacy in the information at issue. *Risica*, 466 F.Supp.2d at 440. As explained *supra* pp. 9-10, all employees have a reasonable expectation of privacy in their medical information.

The issue in *Powell* was whether a prison guard *who already knew* that a prisoner was a transsexual violated her constitutional right to privacy when he informed another guard of this fact. The case did not concern a search of an individual's medical records. This distinction is critical. Prohibiting the government from prying into an individual's medical records protects the confidentiality of the provider-patient relationship and thus encourages the free exchange of information in that relationship that is necessary to effective health care. Prohibiting the government from disseminating information it already has, by contrast, only protects the individual from potential embarrassment and hostility from others. *Id*. at 111 (noting that transexualism is likely to proke "hostility and intolerance from others"). It was only in this latter context, of the government disseminating potentially embarrassing and stigmatizing information

that it already had about an individual, that the Second Circuit held that "the interest in the privacy of medical information will vary with the condition," *id*. at 111.[6]

Indeed, to hold that Plaintiffs' constitutional privacy claim turned on each employee's health conditions would create an unworkable standard:  it would mean that Defendants would only be able to determine the constitutionally of their searches *after* they had already searched the employee's medical files and discovered his or her health conditions.

Defendants next argue that, in resolving Plaintiffs' constitutional privacy claim, the Court would have to engage in a case-by-case balancing of the employee's privacy interest against the Defendants' interest in obtaining the employee's health information.  Def. Mem. 11-12.  This too is incorrect.  The Second Circuit has explained that proof of a "sufficiently weighty government purpose" is needed to overcome an individuals' constitutional privacy rights.  *Statharos*, 198 F.3d at 323; *see also Risica*, 466 F.Supp.2d at 440 (inquiry is whether government acted "in furtherance of 'important governmental objectives and … substantially related to achievement of those objectives'") (citation omitted; ellipses in original).  In *Statharos*, for example, the Second Circuit considered whether a taxi commission regulation requiring financial disclosure from cab owners violated their right to privacy.  198 F.3d 317.  In resolving the privacy claim, the court did not engage in an individualized inquiry into the circumstances or finances of particular cab owners, but considered only the government's interest in requiring such disclosure.  *Id*. at 322-

---

[6] *Doe*, 15 F.3d 264, is distinguishable on the same grounds.  There the issue was whether the defendant government entities violated plaintiff's constitutional right to privacy by issuing a press release that caused others to become aware of what the government already knew: plaintiff's HIV status.  The court's concern was that the government's publicizing plaintiff's HIV status might expose the plaintiff "to discrimination and intolerance."  *Id*. at 267.

26.  Similarly here the focus would not be on each individual search, but on whether Defendants have a sufficiently compelling institutional interest to justify their practice.[7]

Defendants cite *Grosso v. Clarkstown*, 1998 WL 566814 (S.D.N.Y. 1998), for the proposition that the court must engage in a multi-factor inquiry "into the type of record requested, the potential for harm, the adequacy of safeguards to prevent unauthorized disclosure, the need for access to the records, and whether there is an express statutory mandate or articulated public policy regarding the disclosure of the records."  Def. Mem. 12.  The multi-factor test in *Grosso*, however, predates the Second Circuit's articulation of a simple balancing test in *Statharos* and, moreover, is based on Third Circuit law.  *See* 1998 WL 566814, at *6 (multi-factor test lifted from the Third Circuit's *Westinghouse* decision).

In any event, even under *Grosso*'s multi-factor test, no individualized inquiry would be required to resolve Plaintiffs' constitutional privacy claim because the factors apply equally to each search.  In each search, the type of record searched is the same (medical records); the type of information the records contain or might contain is the same (private medical information); the potential for harm and injury from disclosure is the same (interference with provider-patient relationship); any safeguards taken by Defendants to prevent unauthorized disclosure, to the extent they exist, would be the same; and the claimed legal and public policy bases for the searches (the IGA and HIPPA exceptions) are the same.  Thus, resolution of the privacy claim would turn on Defendants' asserted institutional need for its practice; no search-by-search inquiry would be required.

---

[7] As with Plaintiffs' Fourth Amendment claim, it is possible that the Court's analysis may require separate consideration of broad categories of searches.  But, as explained *supra* pp. 14-15, this would not defeat associational standing.

**D.    Individualized Proof Is Not Necessary For Plaintiffs' *Ultra Vires* Claim**

Nor is an individualized, search-by-search inquiry required for the Court to resolve Plaintiffs' *ultra vires* claim in Count I.  To resolve that claim, the Court need only decide a purely legal issue, namely, whether the IGA authorizes USPS OIG to search employees' medical records without their knowledge or consent.  *See Truckers United For Safety v. Mead*, 251 F.3d 183, 188-89 (D.C. Cir. 2001) (organization had associational standing to assert that OIG acted *ultra vires*); *see generally UAW*, 477 U.S. at 287 (individualized inquiry not necessary when suit raises pure question of law).

The IGA authorizes OIG agents to "conduct and supervise audits and investigations," 5 U.S.C. App. 3 §2(1), but it nowhere authorizes them to access the private health records of agency employees without their knowledge or consent.  The investigatory power of OIG, while broad, has limits.  *Truckers*, 251 F.3d at 186; *Burlington N. R. Co. v. OIG, R.R. Ret. Bd.*, 983 F.2d 631, 641 (5th Cir. 1993).  In particular, the IGA does not authorize OIG agents to infringe individuals' legitimate privacy expectations.  *See, e.g., U.S. v. Montgomery County Crisis Ctr.*, 676 F. Supp. 98, 99 (D. Md. 1987) (finding subpoena exceeded OIG's authority under IGA when, *inter alia*, it "entrenches upon expectations of privacy"); *cf. U.S. v. First Nat'l Bank*, 866 F. Supp. 884, 886 (D. Md. 1994) (OIG authority limited by federal privacy law).  Here, as demonstrated above, employees have an expectation, grounded in law, regulations and medical ethics codes, that their medical records will not be disclosed without their knowledge and consent.  Nothing in the text or history of the IGA shows that Congress intended to give OIG the authority to override these privacy expectations.  *Cf. U.S.  v. Calandra*, 414 U.S. 338, 346 (1974)

(despite its broad investigatory authority, grand jury is "without power to invade a legitimate privacy interest protected by the Fourth Amendment").[8]

Moreover, the searches exceed IGA authorization to the extent the USPS OIG agents are investigating something other than health care fraud. *See* Compl. ¶16 ("In some cases, Defendants' investigations relate solely to issues of job performance"). The sole purpose of the IGA was to combat "fraud, abuse, waste, and mismanagement in federal agencies and departments." *Burlington*, 983 F.2d at 642; *see also First Nat'l Bank*, 866 F. Supp. at 886; *Montgomery*, 676 F. Supp. at 99 (finding OIG exceeded its authority when, *inter alia*, investigation was not one involving alleged fraud, inefficiency or waste).

Defendants argue that an individualized inquiry is required to determine whether the HIPAA "law enforcement" and "health oversight" exceptions justify the searches. Def. Mem. 5-8. These HIPAA exceptions, however, are irrelevant to determining whether the IGA authorizes Defendants' practice. As HHS has explained, HIPAA "does not create any new right of access to health records by oversight agencies and it cannot be used as authority to obtain records *not otherwise legally available* to the oversight agency." 65 Fed. Reg. 82,462, 82,528 (2000) (emphasis added).

---

[8] USPS OIG has also exceeded its authority under the IGA by using the HCP letters, not subpoenas, to access employee health records. The IGA authorizes OIG agents "to require *by subpoena* the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by the Act." 5 U.S.C. App. 3 §6(a)(4) (emphasis added). The only exception to this subpoena requirement applies when OIG agents seek documents from federal agencies. *See id.* ("procedures other than subpenas shall be used by the Inspector General to obtain documents and information from Federal agencies"). Subpoenas must be "limited in scope, relevant in purpose, and specific in directive," *See v. Seattle*, 387 U.S. 541, 544 (1967), and if they are not, they are subject to being struck down by a court, *see id.* at 545; *Calandra*, 414 U.S. at 346 (subpoena will "be disallowed" if "too sweeping in its terms") (citation omitted). Because USPS OIG, rather than using subpoenas, uses the HCP letters, which place no limit on the employee medical records to be searched, Defendants' practice is *ultra vires*.

But even if the Court considered the two HIPAA exceptions Defendants cite, no individualized inquiry would be necessary because in *no* case would the searches satisfy the exceptions.

First, HIPAA's "law enforcement" exception only applies when the health information is sought "for a law enforcement" purpose. *Id*. §164.512(f). The exception, therefore, does not apply to those searches by Defendants that do not involve potential criminal conduct by the employee. *See* Compl. ¶16 (Defendants' practice "not limited to criminal investigations"). But the exception does not justify even those searches related to potential criminal conduct. The Fourth Amendment requires a warrant for all searches, *see supra* pp. 12-14, but particularly searches that concern potential criminal conduct, *see supra* n.4. A HIPAA exception cannot trump the United States Constitution.

In any event, the HIPAA "law enforcement" exception requires the party requesting access to an individual's health information to use at least an "administrative subpoena or similar process" or "a separate written statement that, on its face, demonstrates that the applicable requirements have been met." 45 C.F.R. §164.514(h)(2)(i)(A). Here, USPS OIG does not use an administrative subpoena or other process, but only the HCP letters. *See* Compl. ¶18. Because the HCP letters nowhere even mention the "law enforcement" exception, let alone demonstrate how its requirements have been met, *see* Compl., Ex. A, they fail to satisfy Section 164.514(h)(2)(i)(A). [9] Indeed, since the HCP letters place no limit on the health information

---

[9] The complaint states that the HCP letters "differ somewhat from case to case" but are "generally similar in form." Compl. ¶19.

sought, they fail to satisfy the exception's requirement that the written request be "specific and limited in scope to the extent reasonably practicable." 45 C.F.R. §164.512(f)(1)(ii)(C)(2).[10]

Nor can the "health oversight" exception justify the searches. That exception only applies when the individual is suspected of health care fraud. *See* 45 C.F.R. §164.512(d)(2); *see also* 65 Fed. Reg. 82,462, 82,529 (2000) (HHS regulation explaining that HIPAA Section 164.512(d)(2) defines oversight activity "to mean investigations of health care fraud."); *id*. at 82,672 (explaining that "health oversight activity" does not include investigation of individual that "does not arise out of and is not directly related to health care fraud."); *see, e.g., U.S. v. Metro. Ambulance & First-Aid Corp.*, 395 F.Supp.2d 1, 5 (E.D.N.Y. 2005) (Section 164.512(d)(2) applies to case where defendant accused of fraudulently obtaining reimbursement for ambulance transportation services); *U.S. v. Univ. Hosp. Inc.*, 2006 WL 2612631, *3 (S.D. Ohio 2006) (in case concerned "only tangentially" with receipt of health care, "government's broadly stated and ill-defined interests in health oversight and law enforcement" do not outweigh privacy concerns). HIPAA's "health oversight" exception, therefore, does not apply to Defendants' practice to the extent that practice includes searches not related to alleged fraud by employees to obtain health benefits. *See* Compl. ¶16 (Defendants' searches "not limited to … investigations related to health benefits").

But HIPAA's "health oversight" exception does not even apply in those cases involving suspected workers' compensation fraud, *see* Compl. ¶16, where the employee *is* seeking government health benefits. HIPAA permits disclosures related to workers' compensation only "as authorized by and to the extent necessary to comply with" applicable workers' compensation laws. 45 C.F.R. §164.512(l). Nothing in FECA, the workers' compensation law governing

_____

[10] They also violate HIPAA's requirement that, even when disclosures are permitted, they be limited to the minimum disclosure necessary. *See* 45 C.F.R. §164.502(b)(1).

23

postal employees, authorizes employers to interview employees' medical providers or to obtain their medical records without their knowledge or consent. Indeed, as noted *supra* p. 11, a DOL regulation under FECA makes clear that such *ex parte* contacts are prohibited.

Because the HIPAA exceptions do not justify *any* searches, they would not require a search-by-search inquiry.

Plaintiffs next argue that the *ultra vires* claim requires individualized proof to determine whether the searches violate the Privacy Act. Def. Mem. 9-10. But whether the Privacy Act applies at all is a purely legal question. *Carton v. Reno*, 310 F.3d 108, 111 (2d Cir. 2002) (cited at Def. Mem. 9) (whether 5 U.S.C. §552a(e)(2) applies to federal employment relationship is open legal question). If it applies, the question is whether Defendants' practice of seeking employee medical information from the employee's medical provider without notice to the employee, rather than first asking the employee to disclose the information, violates the statute's requirement that the agency "collect information to the greatest extent practicable directly from the subject individual." 5 U.S.C. §552a(e)(2). That USPS OIG only began its practice in 2006, Compl. ¶16, strongly suggests that it had no previous need -- in any circumstances -- to engage in such *ex parte* contact with employees' medical providers. But even if *some* individualized proof were required in connection with the Privacy Act, such as consideration of the circumstances of certain representative cases, that would not defeat associational standing. *See supra* pp. 4-5 (third prong of test only defeated if *each* member's participation is required). And even if the Court somehow determined that proof were required from each individual on this point, that would still not defeat Plaintiffs' standing, since Plaintiffs clearly have standing on their constitutional claims and on the rest of their *ultra vires* claim. *See Sherwin-Williams*, 2005 WL 2128938, at *8 (association's standing "not jeopardized" because certain elements of one

claim requires individualized proof, when it has standing "on an appreciable portion" of the rest of the action, including constitutional claim).

## II.     **PLAINTIFFS' *ULTRA VIRES* COUNT STATES A CLAIM FOR RELIEF**

Finally, Defendants argue that Plaintiffs' *ultra vires* count should be dismissed for failing to state a claim for relief.  Def. Mem. 17-19.  A court should not grant a motion to dismiss under Rule 12(b)(6) unless convinced "that the complaint cannot state any set of facts that would entitle the plaintiff to relief."  *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).  Because the IGA provides no authority for Defendants to infringe employees' legitimate expectations of privacy in their medical information, and because the HIPAA exceptions cannot justify Defendants' practice, Plaintiffs' *ultra vires* count states a claim for relief.[11]

### CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

July 3, 2008                                                Respectfully submitted,


                                                /s/ Peter D. DeChiara
                                                COHEN, WEISS and SIMON LLP

                                                /s/ Darryl J. Anderson
                                                O'DONNELL, SCHWARTZ &
                                                ANDERSON, PC

---

[11] Defendants claim that Plaintiffs fail to allege an "adverse effect" on employees as required to bring a civil action under the Privacy Act.  Def. Mem. 18-19 (citing 5 U.S.C. §552a(g)(1)(D)).  But Plaintiffs are not asserting a Privacy Act claim, only an *ultra vires* claim in connection with the IGA.  In any event, Defendants' practice does create an "adverse effect" on employees by disturbing the confidentiality of their relationships with their medical providers.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                      :

NATIONAL ASSOCIATION OF LETTER     :
CARRIERS, AFL-CIO and AMERICAN POSTAL  :
WORKERS UNION, AFL-CIO,       :           Case No. 08-CV-00458 (DC)
                                        :

                      *Plaintiffs*,     :

           - v. -           :

                                        :

UNITED STATES POSTAL SERVICE and    :           CERTIFICATE OF SERVICE
UNITED STATES POSTAL SERVICE OFFICE  :
OF INSPECTOR GENERAL,       :

                    *Defendants*.    :

---------------------------------------------------------------- x

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this 3rd day of July 2008, I served a copy

of the Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss via First-Class

mail, postage prepaid, upon:

      Lara K. Eshkenazi
      U.S. Attorney's Office, SDNY
      86 Chambers Street
      New York, NY 10007

Dated: July 3, 2008                   /s/ Claire Tuck

                                   Claire Tuck

                                   COHEN, WEISS and SIMON LLP
                                   330 West 42nd Street
                                   New York, New York 10036-6976
                                   Tel:  (212) 563-4100
                                   Fax:  (212) 695-5436