UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

NATIONAL ASSOCIATION OF LETTER
CARRIERS, AFL-CIO and AMERICAN
POSTAL WORKERS UNION, AFL-CIO,

                Plaintiffs,

        v.

UNITED STATES POSTAL SERVICE and
UNITED STATES POSTAL SERVICE OFFICE
OF INSPECTOR GENERAL,

                Defendants.

------------------------------------------------------------- x

               :      08 Civ. 00458 (DC)


REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT


                        MICHAEL J. GARCIA
                        United States Attorney for the
                        Southern District of New York
                        Attorney for Defendants


LARA K. ESHKENAZI
Assistant United States Attorney
86 Chambers Street
New York, New York  10007
Telephone: 212.637.2758
Fax: 212.637.2702
E-mail: lara.eshkenazi@usdoj.gov

        – Of Counsel –

## TABLE OF CONTENTS

ARGUMENT--------------------------------------------------------------------------------------- 1

POINT I.        PLAINTIFFS HAVE FAILED TO ESTABLISH ASSOCIATIONAL
                STANDING-------------------------------------------------------------------------- 1

    A.      Plaintiffs Incorrectly Interpret the Relevant Legal Standard- ------------------------ 1

    B.      Plaintiffs Lack Standing Because Individualized Proof Is Required To
            Prove Their Fourth Amendment Claim- -------------------------------------------------- 3

    C.      Plaintiffs Lack Associational Standing Because Individualized Proof Is
            Required To Prove Their Constitutional Privacy Claim----------------------------- 5

    D.      Individualized Proof Is Required to Prove Plaintiffs' *Ultra Vires* Claim- --------- 7

    E.      The Family and Medical Leave Act and Federal Employees' Compensation
            Act Regulations Do Not Limit the OIG's Ability To Investigate Fraud------------ 8

POINT II.       FAILURE TO STATE A CLAIM FOR RELIEF ON THE BASIS OF *ULTRA
                VIRES* CONDUCT-------------------------------------------------------------------- 10

CONCLUSION- ---------------------------------------------------------------------------------- 10

Defendants United States Postal Service (the "Postal Service") and United States Postal Service Office of Inspector General (the "OIG") (collectively, "the Government"), by their attorney Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint pursuant to Rules12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

### I.  PLAINTIFFS HAVE FAILED TO ESTABLISH ASSOCIATIONAL STANDING

**A.      Plaintiffs Incorrectly Interpret the Relevant Legal Standard**

Plaintiffs misinterpret the standard for associational standing articulated in Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 342 (1977) and as interpreted by the Second Circuit in Bano v. Union Carbide Corp., 361 F.3d 696, 713 (2d Cir. 2004).  They insist that an association lacks standing to pursue their claims only if the types of claims asserted require the participation of *every* injured member of the association.  See Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Pls' Opp.") at 4-5.

As an initial matter, plaintiffs ignore Second Circuit law denying associational standing not only where participation by individual members is required based on the relief sought, but also where "individualized proof" is necessary due to the fact and extent of the alleged injuries. See Bano 361 F.3d at 714.[1]  Nothing in Bano suggests that the "individualized proof" or "individual participation" bars to associational standing, means that an association enjoys

---

[1] As stated in Bano, the need for "individualized proof" is an additional basis for denying associational standing (i.e., the need for participation of individual members is a separate bar to associational standing).  Accordingly, contrary to plaintiffs' argument, even though the OIG may have some of the information relevant to each investigation in its possession, see Pls' Opp. at 6-7 & n.1, the Court would still need to examine the proof concerning each individual investigation. This is precisely the type of "individualized proof" the court in Bano recognized as depriving an association of standing.  361 F.3d at 714.

standing unless the participation of each and every injured member of an association is necessary. In citing <u>Bano</u>, Pls' Opp. at 5, plaintiffs take one reference to "each" out of context and ignore <u>Bano</u>'s holding that "[i]f the involvement of individual members of an association is necessary, either because the substantive nature of the claim or the form of the relief sought requires their participation, we see no sound reason to allow the organization standing to press their claims[.]" 361 F.3d at 715. Plaintiffs' erroneous interpretation of <u>Bano</u> would lead to a result in which an organization could establish associational standing in a case requiring the participation of 99 out of 100 injured parties. That cannot be the intended result of the <u>Hunt</u> test. While it is true that in some cases, the need to have some members of the association participate in the litigation would not deprive that association of standing, <u>see</u> <u>American Booksellers Ass'n v. Random House, Inc.</u>, No. 96 Civ. 0030 (JFK), 1996 WL 499520 (S.D.N.Y. Sept. 4, 1996)[2], in <u>Bano</u>, the court did not quantify the amount of individual proof required to deny an association standing. <u>See</u> 361 F.3d at 715.[3]

Here, for the reasons stated below and in the Government's moving papers, <u>see</u> Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Defs' Mem."), at 5-16, in order to reach a decision regarding the substance of plaintiffs' claims, the Court would be required to consider far more individualized proof than admitted by plaintiffs, <u>see</u> Pls' Opp. at 14 & 19 n.7 (claiming Court would only need to consider "broad categories of

---

[2] In <u>American Booksellers Ass'n</u>, unlike the case at bar, some of the individual members of the association joined the lawsuit, a factor the court considered in holding that the association had established standing. 1996 WL 499520, at *6.

[3] Plaintiffs also assert that because the relief sought in this action is injunctive and "not tailored to any individual," they have met the requirements for associational standing. <u>See</u> Pls' Opp. at 7. As the court noted in <u>Bano</u>, an association cannot establish standing merely by seeking only equitable relief on behalf of its members. 361 F.3d at 714.

searches"). Indeed, the Court would need to analyze each and every instance in which the OIG requested medical information to determine whether any constitutional rights had been violated or whether the OIG's requests constituted *ultra vires* conduct. See Defs' Mem. at 11-12, 13-16.

To the extent plaintiffs argue that the Court should exercise its discretion to disregard the third <u>Hunt</u> requirement because it is a prudential rather than constitutional standard, <u>see</u> Pls' Opp. at 5-6, there is no justification for doing so here. Plaintiffs claim that the individual employees "have no practical means to sue" because they typically do not learn of the disclosure of their records until after the fact. Pls' Opp. at 6. Plaintiffs offer no rationale, however, for not bringing this suit along with the individual members who were allegedly injured by the OIG's alleged practice. Had plaintiffs proceeded in that manner, the unions would still be able to seek injunctive relief and the individual members would be able to seek damages. See <u>id.</u>[4]

**B.    Plaintiffs Lack Standing Because Individualized Proof Is Required To Prove Their Fourth Amendment Claim**

Plaintiffs mistakenly contend that no individualized proof is required for the Court to analyze their Fourth Amendment claim because the differences among the types of investigations conducted by the OIG "are immaterial" to the determination of whether any constitutional violation occurred. Pls' Opp. at 10. Specifically, plaintiffs argue that no individualized proof is necessary with respect to their Fourth Amendment claim because the fact that the OIG did not use search warrants to obtain medical information is, by itself, sufficient to establish a constitutional violation. Pls' Opp. at 12.

---

[4] Plaintiffs' argument that a damages remedy for the individual members would be "both inadequate and nearly impossible to quantify," <u>see</u> Pls' Opp. at 6, fails to acknowledge that damages remedies are routinely sought in such cases. See, e.g., <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 395 (1971) ("Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty.").

Plaintiffs' position, however, is contrary to law.  In <u>O'Connor v. Ortega</u>, 480 U.S. 709, 721-22 (1987), the Supreme Court held that a search warrant is not required for "work-related searches" conducted by the Government.  The Court also explicitly rejected a probable cause standard in favor of a reasonableness test for searches related to "investigations of work-related misconduct."  <u>Id.</u> at 724-26.  The determination of whether the search is reasonable requires a twofold inquiry into (1) whether the search was justified at its inception, and (2) "whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place[.]"  <u>Id.</u> at 726 (internal quotation marks and citations omitted). Regarding the first prong, the Court would need to know in each instance whether the OIG had "reasonable grounds for suspecting that the search [would] turn up evidence that the employee [was] guilty of work-related misconduct[.]"  <u>Id.</u>  Thus, for each instance in which the OIG requested health care records, the Court would need to examine the basis for the OIG's belief that a particular employee engaged in misconduct to determine whether the search was justified. Similarly, with respect to the second prong, the Court would be unable to determine whether a Fourth Amendment violation had occurred without considering for each investigation, whether the OIG's request for health care information was reasonably related to the purpose of its investigation.  <u>See id.</u>

The decisions relied on by plaintiffs, <u>see</u> Pls' Opp. at 9, <u>Nat'l Treasury Employees Union v. Von Raab</u>, 489 U.S. 656 (1989) and <u>Lukas v. TriBorough Bridge and Tunnel Auth.</u>, No. CV-92-3680 (CPS), 1993 WL 597132 (E.D.N.Y. Aug. 18, 1993)), do not support a different result.  In <u>Nat'l Treasury</u> the Court held that the United States Customs Service drug-testing program for two categories of employees did not require a warrant and was reasonable under the Fourth Amendment.  489 U.S. at 677.  No individualized analysis was necessary because, the tests were

4

applied equally to a definable class of individuals.  Similarly, in <u>Lukas</u>, the defendants installed microphones in the toll booths at the Verrazano Narrows Bridge to further a single purpose – the investigation of a string of robberies at the toll booths.  By contrast, here, the form and purpose of the request differs in each case.

Plaintiffs also erroneously cite <u>Nat'l Treasury</u> for the proposition that a "compelling justification" is necessary to justify a warrantless search by a government employer.  <u>See</u> Pls' Opp. at 13.  In fact, although the Court noted that the United States Customs Service certainly had a compelling interest in ensuring that certain of its employees were drug-free, the Court applied a "reasonable" standard in determining whether the Government was permitted to conduct such testing in the absence of a warrant.  <u>Nat'l Treasury</u>, 489 U.S. at 665-67.  In finding that it was "reasonable to dispense with the warrant requirement" the Court cited its own precedent as recognizing that "requiring the Government to procure a warrant for every work-related intrusion would conflict with the common-sense realization that government offices could not function if every employment decision became a constitutional matter."  <u>Id.</u> at 666 (internal quotation marks and citations omitted).[5]

### C.    Plaintiffs Lack Associational Standing Because Individualized Proof Is Required To Prove Their Constitutional Privacy Claim

Regarding the constitutional privacy claim, plaintiffs insist that every allegedly injured member of their union has a reasonable expectation of privacy and, therefore, no individualized proof is necessary.  Pls' Opp. at 17.  For the reasons stated in the Government's opening brief, however, not every medical condition is afforded the same level of privacy, and an individual's

---

[5] None of the cases cited by plaintiffs, <u>see</u> Pls' Opp. at 13,  address the standard for the Government to obtain information under the IG Act.  <u>See United States v. Westinghouse Elec. Corp.</u>, 615 F. Supp. 1163, 1182-83 (W.D. Pa. 1985), <u>aff'd</u>, 788 F.2d 164, 166 (3d Cir. 1986) (finding that probable cause is not required under the IG Act).

privacy interest may be outweighed by the Government's interest in obtaining the sought after medical information.  See Defs' Mem. at 11-12.  Thus, even if plaintiffs were able to establish that every union member whose medical information was requested by the OIG had a reasonable expectation of privacy in those records without individualized proof in each instance in which the OIG requested health care related information, the Court would need to consider whether the Government had a "strong government interest" in seeking such information.  See Crawford v. Manion, No. 96 Civ. 1236 (MBM), 1997 WL 148066, at *2 (S.D.N.Y. Mar. 31, 1997) ("[P]rivacy rights in medical records can be overcome by a strong government interest." (citing Doe v. City of New York, 15 F.3d 264, 269 (2d Cir. 1994)).  Plaintiffs fail to articulate how the Court would be able to determine whether the Government had a strong government interest supporting each request for medical information in the absence of analyzing each individual investigation at issue.

Plaintiffs' reliance on Statharos v. New York City Taxi and Limousine Comm'n, 198 F.3d 317 (2d Cir. 1999), for the proposition that the Court would not need to engage in an individualized inquiry, see Pls' Opp. at 18, is misplaced.  That case involved the determination of whether a regulation promulgated by the New York City Taxi and Limousine Commission requiring financial disclosure forms to be completed by shareholders, officers, and directors of corporations owning taxi medallions violated their constitutional right to privacy.  Statharos, 198 F.3d at 319-21.  The regulations considered by the court in Statharos applied equally to a defined class of individuals.  Id.  There is no such regulation, policy or rule at issue here.  Instead, plaintiffs challenge OIG's individually tailored requests for health care information for investigations that are unique in both scope and purpose.

Moreover, contrary to plaintiffs' assertions, see Pls' Opp. at 19, nothing in Statharos indicates that the multi-factor test articulated in Grosso v. Town of Clarkstown, No. 94 Civ. 7722

6

(JGK), 1998 WL 566814, *6 (S.D.N.Y. Sept. 3, 1998), for determining whether the Government has demonstrated a substantial interest outweighing an individual's right to privacy, is inapplicable.  In arguing that the <u>Grosso</u> analysis should not be considered by this Court, plaintiffs state that the court based the articulated factors on Third Circuit law.  Pls' Opp. at 19. Plaintiffs conveniently omit that the <u>Grosso</u> court also cited <u>Schachter v. Whelan</u>, 581 F.2d 35, 37 (2d Cir. 1978) in support of the application of a multi-factor test.  <u>Grosso</u>, 1998 WL 566814, at *6.  In <u>Schachter</u>, the Second Circuit held that state-issued subpoena to a physician violated the privacy rights of the physician and his patients.  In reaching its decision, the court noted the importance of the subpoena to that investigation, the public policy underlying the investigation, and the potential for any disclosure of the records – essentially the factors articulated in <u>Grosso</u>. Nor does the <u>Statharos</u> decision in any way suggest the abandonment by the Second Circuit of the approach it adopted in <u>Schachter</u> and further articulated in <u>Grosso</u>.

**D.      Individualized Proof Is Required to Prove Plaintiffs' *Ultra Vires* Claim**

Curiously, plaintiffs claim that the HIPAA privacy regulations, including the law enforcement and health oversight exceptions are "irrelevant" to their *ultra vires* claim, <u>see</u> Pls' Opp. at 21, even though Count I of the complaint alleges that "[d]efendants have exceeded their statutory authority by adopting a policy and practice of obtaining and disclosing employees' protected health information without their knowledge and consent, in violation of public policy as defined by the HIPAA Privacy Regulations and the Privacy Act of 1974."  Compl. ¶ 26. Accordingly, based on the allegations in the complaint, the Court cannot consider Count I of the complaint without determining the applicability of the HIPAA privacy regulations, which include the law enforcement and health oversight exceptions.

In any event, based on the allegations in the complaint, individualized proof would be

7

necessary in order for the Court to determine whether the OIG's practice of requesting medical information constitutes *ultra vires* conduct in light of the fact that the Court must analyze in each instance: (1) the type of investigation being conducted; (2) the relevance of the records to the investigation or inquiry; and (3) the specific form of the request to health care providers.  See Defs' Mem. at 6-8.  Plaintiffs concede that the relevant facts applicable to each of the above-three factors are different for each investigation.  See Pls' Opp. at 22 (noting that some of the investigations involve criminal conduct and others do not), 23 (noting that some of the investigations relate to health care fraud and others do not); Compl. ¶ 16 (alleging that the investigations are related to potential criminal conduct, health care benefits, job performance and the imposition of disciplinary action); Compl. ¶ 19 (alleging that the letters used by OIG to request health care and medical information "differ somewhat from case to case").  Plaintiffs also appear to concede that at least "some individualized proof" may be required with respect to the question of whether the OIG's practice violates the Privacy Act.  See Pls' Opp. at 24 (emphasis omitted).  As the Government set forth in its moving papers, however, proving plaintiffs' *ultra vires* claim will require more than "some" individualized proof as the Court will need to examine each investigation.  See Defs' Mem. at 5-10.[6]

**E.    The Family and Medical Leave Act and Federal Employees' Compensation Act Regulations Do Not Limit the OIG's Ability To Investigate Fraud**

Finally, plaintiffs suggest that an individualized inquiry is not necessary because

---

[6] Plaintiffs's citations to cases in which courts were faced with single instances of alleged *ultra vires* conduct do not support their theory that individualized proof is not required here where multiple instances of *ultra vires* conduct are alleged.  See Pls' Opp. at 20 (citing Truckers United for Safety v. Mead, 251 F.3d 183, 187 (D.C. Cir. 2001) (addressing the legality of a single investigation and search warrant); Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock, 477 U.S. 274, 281-86 (1986) (considering the lawfulness of a single policy directive)).

8

regulations promulgated by the Department of Labor under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and the Federal Employees' Compensation Act, 5 U.S.C §§8101-8152, categorically limit an employer's ability to contact health care providers without employee consent. See Pls' Opp. at 11-12, 23 (citing 29 C.F.R. §825.307(a) and 20 C.F.R. §10.506). Nothing in those regulations, however, addresses or limits the OIG's ability to request health care records during an investigation involving fraud, waste or abuse. See 29 C.F.R. §825.307; 20 C.F.R. §10.506. The OIG's purpose is to prevent and detect fraud and abuse in Postal Service programs. See Defs' Mem. at 8. In order to achieve this goal, pursuant to its authority under the Inspector General Act, the OIG necessarily has access to investigative tools that are not available to the Postal Service. See 5 U.S.C. app. 3 §§ 6(a), 8G(g)(1). The regulations cited by plaintiffs merely set forth the guidelines for the "employer" (i.e., the Postal Service). See id. The OIG has a personnel and pay system separate from the Postal Service's, and has the authority to hire its own employees. See 5 U.S.C. app. 3, § 6(a)(7); 39 U.S.C. § 1003. The Inspector General, who reports to nine presidentially-appointed Governors, is precluded from reporting to or being supervised by the Postmaster General or any other officer or employee of the Postal Service. 5 U.S.C. app. 3, § 8G(a)(4)(B), (d); 39 C.F.R. § 230.1(b). Simply put, the OIG is not the "employer" of Postal Service employees.[7]

---

[7] Plaintiffs cite an unpublished Federal Circuit decision to support their position that the Department of Labor regulations limit OIG's investigative abilities. Pls' Opp. at 11 n.2 (citing Gaston v. Merit Systems Protection Bd., 2006 WL 3779754, at *1 (Fed. Cir. Dec. 22, 2006)). In addition to being non-binding precedent, the Gaston decision has no applicability here as it only addresses the question of whether an employee of the OIG is also an employee of the Postal Service for the purpose of denying the employee's appeal under the Whistleblower Protection Act. Gaston, 2006 WL 3779754, at *1. The decision does not state that all Postal Service employees are also employees of OIG, and it does not address the OIG's independent investigative authority derived from the Inspector General Act.

## II. FAILURE TO STATE A CLAIM FOR RELIEF ON THE BASIS OF *ULTRA VIRES* CONDUCT

In their opposition, plaintiffs claim that the OIG does not have authority under the Inspector General Act  and the HIPAA law enforcement and health oversight exceptions to seek medical records of Postal Service employees, in the absence of notice and consent, to pursue investigations of fraud, see Pls' Opp. at 25, but they cite no support for this position.  Indeed, accepting plaintiffs' argument would result in depriving the OIG of crucial investigative powers needed for its mission to combat fraud, waste and abuse in Postal Service Programs.  See 5 U.S.C. app. 3 § 8G (f)(3)(B)(i); 39 C.F.R. § 230.1(d).  Accordingly, because OIG's alleged practice is entirely consistent with the HIPAA Privacy Regulations, see Defs' Mem. at 16-19, the Court should dismiss Count I of the complaint for failure to state a claim.

## CONCLUSION

For the reasons stated herein and in the Government's opening papers, the Court should grant defendants' motion for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and dismiss the complaint in its entirety.

Dated:  New York, New York
         July 18, 2008

                                               Respectfully submitted,

                                               MICHAEL J. GARCIA
                                               United States Attorney for the
                                               Southern District of New York
                                               Attorney for Defendants

By:     /s/ Lara K. Eshkenazi
         LARA K. ESHKENAZI
         Assistant United States Attorney
         Telephone: (212) 637-2758
         Fax: (212) 637-2702
         E-mail: lara.eshkenazi@usdoj.gov