UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x
                          :

NATIONAL ASSOCIATION OF LETTER
CARRIERS, AFL-CIO, and AMERICAN    :
POSTAL WORKERS UNION, AFL-CIO,

                          :

             Plaintiffs,

                          :

       - against -

                          :

UNITED STATES POSTAL SERVICE and
UNITED STATES POSTAL SERVICE       :
OFFICE OF INSPECTOR GENERAL,

                          :

           Defendants.

                          :
- - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/09
```

**OPINION**

08 Civ. 458 (DC)

**APPEARANCES:**   (see last page)

**CHIN, District Judge**

      In this case, two labor unions representing postal
employees allege that the United States Postal Service (the
"USPS") and its Office of Inspector General ("OIG") have
instituted an unlawful policy of obtaining employees' personal
medical information from health care providers without the
employees' knowledge or consent.  The unions allege that the
policy is unlawful and unconstitutional and request that the
Court enjoin the USPS from continuing the practice.  The USPS
moves to dismiss the complaint for lack of subject matter
jurisdiction pursuant to Federal Rule of Civil Procedure
12(b)(1), contending that the unions do not have associational
standing to bring this suit.  Alternatively, the USPS moves to
dismiss the first count of plaintiffs' complaint pursuant to Rule
12(b)(6) for failure to state a claim upon which relief may be
granted.  For the following reasons, the motion to dismiss is
denied, in both respects.

## BACKGROUND

### A.   The Parties

Plaintiff National Association of Letter Carriers, AFL-CIO ("NALC"), is a labor union and association of active and retired postal employees. (Compl. ¶ 11). It is the exclusive collective bargaining representative for more than 200,000 "city letter carriers" employed by USPS. (Id.).

Plaintiff American Postal Workers Union, AFL-CIO ("APWU"), is a labor union and association of postal employees. (Id. ¶ 12). APWU represents more than 260,000 USPS employees who work in Clerk, Maintenance, and Motor Vehicle Services. (Id.).

The USPS is an independent establishment of the executive branch of the government of the United States. (Id. ¶ 9). OIG is an independent agency within, and part of, USPS. (Id. ¶ 10). OIG was created and is governed by the Inspector General Act, 5 U.S.C. App. 3, § 8G(b). (Id.).

NALC and APWU are parties to separate collective bargaining agreements with the USPS, that set forth terms and conditions of their members' employment. (Id. ¶ 11, 12).

### B.   Facts

For purposes of this motion, the facts alleged in the complaint are assumed to be true.

The USPS routinely acquires employees' medical information for a variety of reasons, including, inter alia, determining whether injured employees are fit for duty or eligible for disability retirement. (Id. ¶ 14). The USPS's

-2-

longstanding practice was to request the information directly
from its employees.  (Id.).

        In 2006, defendants instituted a new policy (the
"Policy") authorizing OIG agents to contact -- ex parte --
employees' physicians and medical care providers to obtain
medical information.  (Id. ¶ 16).  The affected employees are
neither aware of such communications nor do they consent to the
release of their medical information.  (Id.).  The information is
sought in connection with investigations into potential criminal
misconduct and eligibility for health benefits and workers'
compensation.  (Id.).  Medical information is also sought for
issues relating to job performance and disciplinary action.
(Id.).

        To obtain the employees' medical records, OIG agents
present health care providers with a letter (the "HCP letter")
claiming that defendants have a right to review the protected
health information.  (Id. ¶ 19).  The HCP letters "differ
somewhat from case to case, but are generally similar in form."
(Id.).  An example of an HCP letter advises:

> This letter provides you with the
> statutory and regulatory authority that
> allows you to release protected health
> information requested by the [OIG] of the
> [USPS] when it is engaged in oversight
> activities involving the Office of Workers'
> Compensation Programs (OWCP).
>     Health care providers such as yourself
> are permitted to disclose protected health
> information to health oversight agencies
> without the written consent or authorization
> of the individual when these agencies are
> conducting oversight activities authorized by
> law.  The review of protected health
> information is recognized as a necessary

-3-

oversight activity because it is relevant in determining beneficiary eligibility. 45 C.F.R. § 164.512(d)(1)(iii).

[OIG] is a health oversight agency because it oversees through our investigations a government program in which health information is necessary to determine eligibility or compliance. 45 C.F.R. § 164.501.

Furthermore, when the Department of Health and Human Services (HHS) first proposed rules to implement the Health Insurance Portability and Accountability Act of 1995 (HIPAA), it included a list of agencies that could be health oversight agencies. HHS listed "Offices of Inspectors General of federal agencies" as health oversight agencies.

Finally, the Inspector General Act of 1978 authorized [OIG] to investigate fraud, waste, and abuse in Postal Service programs and operations, one of which programs is the Postal Service's participation in OWCP. 5 U.S.C. App. 3 §6(a)(4).

Normally, the individual would have a right to know that disclosure of the individual's protected health information had been made. However, because alerting the individual of this disclosure would likely jeopardize our oversight activities, we request at this time that you refrain from notifying the individual of your disclosure for one year from the date of this letter. Regulations authorize you to withhold notification under these circumstances. 45 C.F.R. § 164.528(a)(2)(II)(C).

(Compl. Ex. A).

NALC learned of defendants' Policy in September 2007. William H. Young, NALC President, immediately wrote to the USPS Board of Governors demanding that it direct OIG to stop gathering employees' health information without their knowledge or consent. (Compl. Ex. B). On November 2, 2007, the Board of Governors responded, explaining:

-4-

> The Postal Service has reviewed the issues
> raised in your letter, and concluded that
> [OIG] is operating within the statutory
> authority of HIPAA, as well as its own
> statutory authority under the provision of
> Title 39 and the Inspector General Act of
> 1978 in seeking these records.

(Compl. Ex. C).

## C.  **Procedural History**

Plaintiffs commenced this action on January 17, 2008.
The complaint alleges that the Policy: (1) constitutes ultra
vires conduct because it exceeds the defendants' statutory
authority under the Inspector General Act (the "IG Act") in
violation of the Health Insurance Portability and Accountability
Act ("HIPAA"), 42 U.S.C. § 1320d-2, and the Privacy Act of 1974
(the "Privacy Act"), 5 U.S.C. § 552a(e)(2); (2) violates postal
employees' constitutional right to privacy; and (3) violates the
Fourth Amendment.

On June 6, 2008, the Government moved to dismiss the
complaint.

## DISCUSSION

The USPS argues that the complaint must be dismissed
because plaintiffs do not have associational standing to bring
this action.  First, I discuss the standards governing subject
matter jurisdiction and associational standing.  I then discuss
plaintiffs' claims in turn.  For each claim, I discuss the
applicable law and the corresponding factual inquiry necessary to
resolve the claim.  I conclude that individualized proof is not
necessary to resolve any of the three claims.  I conclude further

-5-

that the first count of the complaint states a plausible claim.
Accordingly, the Government's motion to dismiss is denied.
Plaintiffs may proceed with this case.

## A. General Standards

### 1. 12(b)(1) Standard

As the parties "seeking to invoke the subject matter
jurisdiction of the district court," Scelsa v. City Univ. of New
York, 76 F.3d 37, 40 (2d Cir. 1996), plaintiffs must demonstrate
by a preponderance of the evidence that there is subject matter
jurisdiction. Aurecchione v. Schoolman Transp. Sys., Inc., 426
F.3d 635, 638 (2d Cir. 2005). Though "no presumptive
truthfulness attaches to the complaint's jurisdictional
allegations," Guadagno v. Wallack Ader Levithan Assocs., 932 F.
Supp. 94, 95 (S.D.N.Y. 1996), a court should "'constru[e] all
ambiguities and draw[] all inferences' in a plaintiff's favor."
Aurecchione, 426 F.3d at 638 (quoting Makarova v. United States,
201 F.3d 110, 113 (2d Cir. 2000); see also Sharkey v.
Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008). Contested
jurisdictional allegations need not be accepted as true, and the
Court may consider matters outside the complaint. Jarvis v.
Cardillo, No. 98 Civ. 5793 (RWS), 1999 WL 187205, at *2 (S.D.N.Y.
Apr. 6, 1999).

### 2. Associational Standing

An association that has not itself suffered an injury
has standing to sue on behalf of its members if it meets the

standard set out by the Supreme Court in <u>Hunt v. Washington State</u> <u>Apple Adver. Comm'n</u>, 432 U.S. 333 (1977). Under <u>Hunt</u>, an association has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Id.</u> at 343.

The third prong of the <u>Hunt</u> test is a prudential consideration, not a constitutional requirement. <u>United Food and</u> <u>Commercial Workers Union Local 751 v. Brown Group, Inc.</u>, 517 U.S. 544, 555 (1996). In some cases, "competing considerations outweigh any prudential rationale against representational standing -- for example, where practical obstacles prevent a party from asserting rights on its own behalf." <u>In re Methyl</u> <u>Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.</u>, No. MASTER FILE 1:00-189, MDL 1358 (SAS), 2005 WL 1500893, at *4 (S.D.N.Y. June 24, 2005).

If an association seeks prospective relief, "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." <u>Warth v. Seldin</u>, 422 U.S. 490, 515 (1975). Even when an association requests equitable relief, however, the third prong of the <u>Hunt</u> test is not automatically satisfied. See <u>Nat'l</u> <u>Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press</u>, 990 F. Supp. 245, 248 (S.D.N.Y. 1997) ("Even when an association

-7-

requests an injunction, the claim it asserts may be such that it cannot be resolved on an association-wide basis.").   An association lacks standing "where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof or where the relief requested would require the participation of individual members in the lawsuit." Bano v. Union Carbide Corp., 361 F.3d 696, 713 (2d Cir. 2004) (quotations, citations, and alterations omitted).   Courts vary as to the amount of individualized proof and participation of individual members they will permit before concluding that associational standing is precluded.   See, e.g., Nat'l Ass'n of Coll. Bookstores, Inc., 990 F. Supp. at 250 ("The fact that a limited amount of individuated proof may be necessary does not in itself preclude associational standing."); Employees Committed For Justice v. Eastman Kodak Co., 407 F. Supp. 2d 423, 434 (W.D.N.Y. 2005) ("The third prong of Hunt does not require dismissal for lack of standing simply because several members of an association seeking injunctive relief testify or participate in a lawsuit.").   Furthermore, when a case raises a pure question of law, the Court does not need to "consider the individual circumstances of any aggrieved [] member."   Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America v. Brock, 477 U.S. 274, 287 (1986).

## B.   Ultra Vires Claim

Count One of plaintiffs' complaint alleges that defendants "have exceeded their statutory authority by adopting a

policy and practice of obtaining and disclosing employees' protected health information without their knowledge or consent, in violation of public policy as defined by the HIPAA Privacy Regulations and the Privacy Act of 1974." (Compl. ¶ 26). The USPS argues that plaintiffs lack associational standing to bring this claim because resolution of the claim requires individualized proof. To the contrary, I hold that this claim raises purely legal questions and thus may proceed on the basis of associational standing. Hence, this prong of the motion is denied.

### 1. OIG's Authority

The enactment of the IG Act "reflected congressional concern that fraud, waste and abuse in United States agencies and federally funded programs were reaching epidemic proportions." United States v. Westinghouse Elec. Corp., 788 F.2d 164, 165 (3d Cir. 1986) (internal quotations omitted). Pursuant to the IG Act, OIG may "initiate, conduct and supervise such . . . investigations in the [USPS] as the Inspector General considers appropriate." 5 U.S.C. app. 3, § 8G(f)(3)(B)(i). OIG is responsible for "detecting and preventing fraud, waste, and abuse in the programs and operations of the Postal Service." 39 C.F.R. § 230.1(d). OIG has broad authority to access information and documentation. 5 U.S.C. app. 3 § 6(a) (OIG has authority to, inter alia, "have access to all records, reports, audits, reviews, documents, papers, recommendations, or other material available to the applicable establishment . . . make such investigations and reports relating to the administration of the

programs and operations of the applicable establishment as are, in the judgment of the Inspector General, necessary or desirable.").

## 2.   **HIPAA and the Privacy Act**

HIPAA was enacted by Congress "to ensure the confidentiality of protected health information maintained by covered entities." Gratton v. United Parcel Service, Inc., No. CV 07-3071 (TCP)(AKT), 2008 WL 4934056, at *4 (E.D.N.Y. Nov. 14, 2008) (quotations omitted). HIPAA's Privacy Regulations, 45 C.F.R. Parts 160 and 164, authorize use and disclosure of protected health information "without the written authorization of the individual . . . or the opportunity for the individual to agree or object" in a few limited circumstances. 45 C.F.R. § 164.512. Two are applicable to this case and are discussed in turn.

The Privacy Regulations permit disclosure of protected health information for a "law enforcement purpose" to a "law enforcement official" provided certain conditions are met. Id. § 164.512(f). Disclosures may be made pursuant to an "administrative request" if:

> (1) The information sought is relevant and
> material to a legitimate law enforcement
> inquiry;
> (2) The request is specific and limited in
> scope to the extent reasonably practicable in
> light of the purpose for which the
> information is sought; and
> (3) De-identified information could not
> reasonably be used.

Id. § 164.512(f)(1)(ii)(C). The administrative request may be made via "administrative subpoena or similar process or by a

separate written statement that, on its face, demonstrates that the applicable requirements have been met." Id. § 164.514(h)(2)(i)(A).

The Privacy Regulations also permit disclosure of protected health information "to a health oversight agency for oversight activities authorized by law." 45 C.F.R. § 164.512(d)(1). The oversight activities include, inter alia, "civil, administrative, or criminal investigations" and "licensure or disciplinary actions." Id. The oversight must be of: (1) the health care system; (2) government benefit programs; (3) entities subject to government regulatory programs for which health information is necessary; or (4) entities subject to civil rights laws for which health information is necessary. Id.

The Privacy Act requires government agencies to "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." 5 U.S.C. § 552a(e)(2).

### 3. **Individualized Proof Not Required**

The USPS contends that resolution of this claim requires an analysis of each investigation to determine whether the disclosure was permissible under either the law enforcement or health oversight exception and whether the request complied with the Privacy Act. I disagree. Plaintiffs' claim raises legal issues that do not require individualized proof.

For example, the claim raises the legal question of whether the IG Act permits OIG agents to search employees medical

-11-

records without their knowledge or consent. Although HIPAA permits health care providers to disclose protected health information in certain situations, it does not authorize OIG agents to request the information under the IG Act. Plaintiffs contend that OIG is exceeding its authority merely by requesting the information; resolution of this legal question does not require individualized proof. While I disagree with plaintiffs' argument that the law enforcement and health oversight exceptions are irrelevant to this claim (as they are specifically mentioned in the complaint), the exceptions are more appropriately analyzed when considering the merits of the claim, not when considering the issue of plaintiffs' standing. In other words, while the USPS could assert individualized circumstances on a case-by-case basis to argue that the exceptions apply, individualized inquiry is not required to resolve the broader legal question of whether OIG has the legal authority to ask for the information in the first place.

The claim also raises the question of whether the Policy complies procedurally with the requirements of HIPAA. Plaintiffs argue that the HCP letters fail to satisfy the provisions of the law enforcement exception because they do not explain, on their face, how the requirements of the section have been met. This too is a purely legal inquiry.

As to the Privacy Act, whether it applies to federal employers investigating their own employees is an "open question" in the Second Circuit. Carton v. Reno, 310 F.3d 108, 111 (2d Cir. 2002). Even if the Privacy Act applies, associational

-12-

standing is not precluded.  I recognize that the Second Circuit
has evaluated "[t]he specific nature of each case  . . .  [to]
determine whether an agency has fulfilled its obligation[s]"
under the Privacy Act.  Id. at 111-12 (quotations omitted).  In
this case, however, the Court can categorize plaintiffs' members
into large groups to determine whether the agency has met its
obligations under the Privacy Act.  Utilizing different
categories -- e.g., employees investigated for workers'
compensation fraud and those investigated for issues of job
performance -- the Court can determine whether "third party
sources may be contacted first when practical considerations,
such as confirming or denying false statements, require this or
when the information can only be obtained from third parties.'"
Id. at 112 (quoting Hudson v. Reno, 130 F.3d 1193, 1205 (6th Cir.
1997)).  Resolution of this claim will not require the level of
individualized proof that precludes associational standing.
Accordingly, plaintiffs have associational standing to allege
ultra vires conduct.

### 4.    The Claim is Plausible

The USPS moves, in the alternative, to dismiss the
ultra vires claim pursuant to Federal Rule of Civil Procedure
12(b)(6).  The USPS argues that the complaint fails to adequately
allege how the Policy violates the HIPAA Privacy Regulations and
the Privacy Act.  For the following reasons, this prong of the
motion is denied.

To survive a motion to dismiss, a plaintiff's claim
must be "plausible."  See Bell Atlantic Corp. v. Twombly, 127 S.

Ct. 1955, 1969 (2007); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). Under the plausibility standard, a district court's inquiry focuses on whether the complaint pleads "'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Plaintiffs' ultra vires claim is plausible. The claim adequately alleges that OIG exceeds its authority by requesting protected health information directly from employees' health care providers without their knowledge or consent. Furthermore, the "adverse effect" on the employees -- necessary to state a Privacy Act violation, 5 U.S.C. § 552a(g)(1)(D) -- is destruction of the confidentiality of the employees' protected health information and violation of the right to privacy, as discussed below. Thus, plaintiffs' claim is sufficiently pled. The Rule 12(b)(6) prong of the motion is denied.

## C. Constitutional Privacy Rights

Count Two of plaintiffs' complaint alleges that defendants violate USPS employees' constitutional right to privacy by obtaining and disclosing employees' protected health information without their knowledge or consent.

### 1. Right to Privacy of Medical Information

The Second Circuit has held that there is a constitutional right to privacy in personal information, including medical information. Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994) ("Extension of the right to

-14-

confidentiality to personal medical information recognizes there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over.").  The right, however, is "conditional" and "can be overcome if the government can demonstrate a substantial interest that outweighs the [plaintiffs'] right to privacy."  <u>Grosso v. Town of Clarkstown</u>, No. 94 Civ. 7722 (JGK), 1998 WL 566814, at *6 (S.D.N.Y. Sept. 3, 1998).  When balancing the government's interest against an individual's privacy rights, the Court must consider:

> the type of record requested, the information
> it does or might contain, the potential for
> harm in any subsequent nonconsensual
> disclosure, the injury from disclosure to the
> relationship in which the record was
> generated, the adequacy of safeguards to
> prevent unauthorized disclosure, the degree
> of need for access, and whether there is an
> express statutory mandate, articulated public
> policy, or other recognizable public interest
> militating toward access.

<u>Id.</u> (quoting <u>United States v. Westinghouse Elec. Corp.</u>, 638 F.2d 570, 578 (3d Cir. 1980)).

### 2.   <u>Application</u>

A determination of the constitutional privacy claim would require little, if any, individualized proof.  Applying the multi-factored test above would not require individualized proof as the factors would be the same -- or nearly the same -- in every case:  the type of record is medical; the information is protected health information; the potential harm is to the patient and also harm to the relationship between the patient and

his or her health care provider; and the safeguards, need for access, and policy basis are found in the IG Act and the Privacy Regulations.  No individualized proof would be necessary for the defendants to prove its "sufficiently weighty government purpose" in requesting and obtaining the information.  Statharos v. New York City Taxi and Limousine Com'n, 198 F.3d 317, 323 (2d Cir. 1999).  Accordingly, plaintiffs have associational standing to bring a claim for a violation of constitutional privacy rights.

## D.   **Plaintiffs' Fourth Amendment Claims**

Finally, the USPS argues that plaintiffs do not have standing to bring a Fourth Amendment claim for two reasons:  (1) plaintiffs' members do not have standing to sue in their own right, and (2) individualized proof is required.  Because I find that plaintiffs' members do have standing to sue in their own right and individualized proof is not required, plaintiffs have associational standing to proceed with their Fourth Amendment claim.

### 1.   **Plaintiffs' Members Have Standing**

Plaintiffs' members have standing to sue in their own right because even though they do not have possession or ownership of their medical records, their expectation of privacy is reasonable.

#### a.   **Fourth Amendment Standing**

A plaintiff "lacks 'standing' in the Fourth Amendment context when his contacts with the searched premises are so attenuated that no expectation of privacy he has in those premises could ever be considered reasonable."  United States v.

Fields, 113 F.3d 313, 320 (2d Cir. 1997). To evaluate the
reasonableness of a privacy expectation, a person's "property or
possessory interest" in the place or items searched is generally
one factor considered. Id. (internal citations omitted). "Lack
of such an interest[, however,] does not rule out the possibility
that he may still show a reasonable expectation of privacy." Id.

### b.    **Reasonable Expectation of Privacy**

Defendants argue that -- under Second Circuit law -- a
person does not have a constitutionally protected property
interest in his or her medical records maintained by a health
care provider. Thus, according to the USPS, plaintiffs' members
do not have standing to bring a Fourth Amendment claim.

The USPS's argument rests entirely on whether the
employees have a property interest in their medical records. To
support their argument, defendants cite one Second Circuit Court
of Appeals case and one Eastern District of New York case.
Neither case is directly on point. Gotkin v. Miller, 514 F.2d
125, 129 (2d Cir. 1975), involved a former mental patient's right
to inspect and copy her own medical records. The Second Circuit
held that the Fourteenth Amendment did not support the former
patient's claim of a "constitutionally protected, unrestricted
property right directly to inspect and copy their hospital
records." Id. The Court also held the Fourth Amendment
inapplicable to the case. Id. at 130. Gotkin is distinguishable
from the case at hand for at least the following reasons:  (1)
the Second Circuit was reviewing a grant of summary judgment; (2)
standing was not at issue; (3) the case did not involve the

-17-

Government's search of plaintiff's medical records; and, thus (4) the Fourth Amendment was not applicable.  Accordingly, Gotkin does not preclude a finding of standing in this case.

Similarly, Webb v. Goldstein, 117 F. Supp. 2d 289, 295 (E.D.N.Y. 2000), is distinguishable.  In that case, the Court denied plaintiff's Fourth Amendment claim holding that prison medical records did not belong to plaintiff.  Id.  The Court found that the Fourth Amendment was not violated when parole officers provided state authorities with copies of plaintiff's medical records.  Id.  The Court dismissed plaintiff's claim because the medical records "neither belonged to nor were ever in [plaintiff's] possession [and] were the property of New York State."  Id.  In Webb, plaintiff's medical records were prison medical records, and the Court emphasized that they belonged to the State.  This is distinguishable from the case at hand, where the medical records are held by the health care provider and the medical examination and/or procedures that produced the records were conducted privately.

Even assuming postal employees do not have a constitutionally protected property interest in their medical records, a property interest is only one factor to be considered. Defendants fail to acknowledge that a reasonable expectation of privacy may still exist without a property interest.  Although a person's "privacy right in his medical records is neither fundamental nor absolute," Crawford v. Manion, No. 96 Civ. 1236 (MBM), 1997 WL 148066, at *1 (S.D.N.Y. Mar. 31, 1997), USPS employees have -- at a minimum -- standing to bring suit based on

-18-

a reasonable expectation of privacy in their medical records.
Accord United States v. Knoll, 16 F.3d 1313, 1321 (2d Cir. 1994)
(internal citations omitted) ("[T]he protection of the Fourth
Amendment extends to those papers that a person leaves with his
or her lawyer. . . . This is because the client has a subjective
expectation that such papers will be kept private and such
expectation is one society recognizes as reasonable.").

### 2.   **Individualized Proof Not Required**

        As discussed below, plaintiffs' Fourth Amendment claim
does not require individualized proof precluding associational
standing.

#### a.   **Fourth Amendment Standard**

        The Fourth Amendment protects individuals against
unreasonable searches and seizures.  A search must generally be
supported by a warrant issued upon probable cause.  Nat'l
Treasury Employees Union v. Von Raab, 489 U.S. 656, 665 (1989).
The Supreme Court has held, however, that "neither a warrant nor
probable cause, nor, indeed, any measure of individualized
suspicion, is an indispensable component of reasonableness in
every circumstance."  Id.  When a search serves "special
governmental needs" the Court must "balance the individual's
privacy expectations against the Government's interests to
determine whether it is impractical to require a warrant or some
level of individualized suspicion in the particular context."
Id. at 665-66.  "Individuals do not lose Fourth Amendment rights
merely because they work for the government instead of a private

-19-

employer." O'Connor v. Ortega, 480 U.S. 709, 717 (1987); see also Lukas v. TriBorough Bridge and Tunnel Auth., No. CV-92-3680 (CPS), 1993 WL 597132, at *7 (E.D.N.Y. Sept. 15, 1993) ("Traditional Fourth Amendment safeguards applicable in the context of criminal investigations cannot be avoided simply because the agency conducting the search is not a governmental law enforcement agency but a governmental employer ostensibly supervising its employees.").

### b. **Application**

The USPS contends that a reasonableness standard -- not a search warrant or probable cause standard -- should be applied to determine the alleged Fourth Amendment violations in this case. The USPS further argues that a reasonableness standard precludes associational standing because the facts surrounding each employee, investigation, and search would have to be analyzed. I disagree on both points.

The USPS argues that a reasonableness standard applies based on the Supreme Court's holding in O'Connor v. Ortega, 480 U.S. 709 (1987). In O'Connor, the Supreme Court rejected the requirements of a warrant and probable cause and instead adopted a reasonableness standard for "work-related" searches. Id. at 723-24. This case, however, is distinguishable from O'Connor because the searches of medical records in the possession of medical providers do not fit into the framework intended by the Court.

O'Connor applied solely to searches of the workplace. The Supreme Court defined the workplace as "those areas and items

-20-

that are related to work and are generally within the employer's control." Id. at 715.  Although the term "work-related" was used by the O'Connor Court, neither O'Connor nor the cases considered by the Court in reaching its holding involved any area physically outside of the workplace.[1]  The Supreme Court repeatedly made this distinction:

> Balanced against the substantial government interests in the efficient and proper operation of the workplace are the privacy interests of government employees in their place of work which, while not insubstantial, are far less than those found at home or in some other contexts.

Id. at 725.  Here, the medical records searched are not kept in the employees' desk, office, or office building.  The USPS does not represent that the medical information was created as part of USPS's employment application or is necessarily work-related. The Policy apparently would extend to medical records in the possession of employees' purely private health care providers relating to medical matters that could have no bearing on work-related issues.  Hence, this case is not controlled by O'Connor. Accordingly, it is not clear, at this early stage of litigation, that a reasonableness standard and not a probable cause standard should be applied to determine the Fourth Amendment claim.

Moreover, even if a reasonableness standard were appropriate, I disagree with the USPS's contention that "the Court may only determine the reasonableness of the Government's

---

[1]    See, e.g., United States v. Nasser, 476 F.2d 1111, 1123 (7th Cir. 1973) (office search); United States v. Collins, 349 F.2d 863, 868 (2d Cir. 1965) (work area search); United States v. Bunkers, 521 F.2d 1217 (9th Cir. 1975) (locker search); United States v. Blok, 188 F.2d 1019, 1021 (D.C. Cir. 1951) (desk search).

intrusion on a case-by-case basis." (P. Mem. 15). To resolve this claim, the Court may indeed have to categorize plaintiffs' members into large groups -- e.g., investigations related to criminal conduct and those not related to criminal conduct -- but this would not require individualized proof, nor the participation of individual members. A court can determine the reasonableness of the defendants' search of the employees' medical records by weighing the Government's interest in obtaining the protected health information (i.e., the need to investigate workers' compensation fraud) against the employees' expectation of privacy in medical records. Accordingly, plaintiffs have associational standing to bring their Fourth Amendment claim.

## CONCLUSION

For the reasons above, the Government's motion to dismiss is denied. The parties shall attend a pre-trial conference on April 6, 2009 at 11:00 a.m.

SO ORDERED

Dated:    New York, New York
         March 30, 2009

DENNY CHIN
United States District Judge

-22-

## APPEARANCES

For Plaintiff National Association of Letter Carriers, AFL-CIO:

        COHEN, WEISS and SIMON LLP
            By:   Bruce H. Simon, Esq.
                  Peter D. DeChiara, Esq.
                  Claire Tuck, Esq.
        330 West 42nd Street
        New York, New York   10036

For Plaintiff American Postal Workers Union, AFL-CIO:

        O'DONNELL, SCHWARTZ & ANDERSON, PC
            By:   Darryl J. Anderson, Esq.
        1300 L Street N.W., Suite 1200
        Washington, DC 20005

        SPIVAK LIPTION LLP
            By:   Adrienee L. Saldana, Esq.
        1700 Broadway, Suite 2100
        New York, New York   10019

For Defendants:

        LEV L. DASSIN
        Acting United States Attorney for the Southern
        District of New York
            By:   Lara K. Eshkenazi, Esq.
                  Assistant United States Attorney
        86 Chambers Street
        New York, New York   10007